Present:  All the Justices

R.K. CHEVROLET, INC.

OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.

v.  Record No. 960943

January 10, 1997

JAMES J. HAYDEN, JR.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
John K. Moore, Judge

The principal issue in this appeal is whether the trial court erred in striking the plaintiff's evidence.  We also consider whether the court erred in limiting the testimony of the plaintiff's expert witness.

I

R.K. Chevrolet, Inc. (R.K.) sued James J. Hayden, Jr., seeking, inter alia, damages for breach of contract.  The case was tried to a jury, and, after R.K. had rested its case, the trial court struck R.K.'s evidence and entered judgment in favor of Hayden.  In doing so, the court ruled that, as a matter of law, the alleged contract was invalid and unenforceable because it lacked consideration and was incomplete and indefinite.  The court further ruled that, assuming a contract existed, R.K. had failed to prove any recoverable damages because the damages claimed were speculative and unforeseeable as a matter of law. We awarded R.K. this appeal.

II

When, as here, a trial court strikes a plaintiff's evidence, we must view that evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff.

In the summer of 1990, R.K., a Virginia Beach automobile

dealership, employed Hayden as a salesperson. Shortly thereafter, Robert S. Kline, R.K.'s president, learned that Hayden was interested in obtaining a management position with R.K. Such a position required special training and allowed access to certain confidential information. Kline had concern about employing Hayden in a management position because, over the years, Hayden's family had owned a number of competing automobile dealerships. Specifically, Kline was concerned that, if R.K. employed Hayden in a used car management position, Hayden might suddenly leave R.K. to work for his father. According to Kline, such a departure by Hayden would be very disruptive to R.K.'s used car business. Kline explained that a dealership's used car manager is a key employee and that a used car manager must have greater competence than a dealership's new car manager.

Consequently, before R.K. employed Hayden as an assistant used car manager, R.K. and Hayden entered into a written contract whereby Hayden agreed to stay with R.K. for a period of no less than one year from August 10, 1990. Hayden honored that contract and continued in his position as used car manager.

When the written contract expired, Hayden became an employee-at-will. While Hayden was so employed, Kline learned that Hayden's father had purchased an automobile dealership in northeastern North Carolina, known as "Coastal Chevrolet." Kline considered Coastal Chevrolet to be a competitor and, therefore, wanted to make certain that Hayden did not leave abruptly to work

for his father.  Hayden understood and appreciated Kline's concern.  Consequently, R.K. and Hayden executed the following document which formed the basis for the present litigation:

Contract Between James J. Hayden &
R. K. Chevrolet, GEO

May 12, 1992

I, James J. Hayden, willingly enter into a two year contract of employment with R. K. Chevrolet, Inc., GEO. The only reason allowable for Mr. Hayden to leave in this time frame, under this contract, is the untimely death of his father.

Therefore, with the above exception, James J. Hayden agrees to work continuously at R. K. Chevrolet, Inc., Geo for at least two years in good faith.

This document was signed on May 12, 1992, by Hayden, as R.K.'s used car manager, and by Kline and Thomas M. Bates, as R.K.'s president and general manager, respectively.

In July 1993, Hayden, without prior notice, quit his employment with R.K.  According to Kline, July is one of the busiest months for used car sales, and Hayden's departure caused a "catastrophic problem" because R.K. did not have a qualified person to replace Hayden.

At trial, R.K. called, as an expert witness, a certified public accountant who specializes in the "automotive practice" area in order to prove the extent and cause of R.K.'s damages. The accountant testified that, during the five-month period following Hayden's departure, R.K. lost expected profits of $348,832.  The accountant had examined R.K.'s financial statements and had found no decline in gross profits during that

time period in any of R.K.'s other departments, including the new vehicle sales department, the service department, and the body shop department. R.K.'s entire loss, according to the accountant, was in the used car department.

R.K. sought to have the accountant testify that, "with a reasonable degree of professional certainty," Hayden's sudden departure from R.K.'s employ caused R.K.'s loss in profits during the five-month period. The trial court, however, sustained Hayden's objection and excluded this testimony. R.K. then proffered this testimony for the record.

III

We first consider whether there was sufficient consideration for the alleged May 12 contract. The trial court concluded that there was no consideration because R.K. "basically agree[d] to do nothing." We do not agree.

Generally, a slight advantage to the party promising or a trifling inconvenience to the party to whom the promise is made is sufficient consideration for a promise. GSHH-Richmond, Inc. v. Imperial Associates, 253 Va. ___, ___, ___ S.E.2d ___, ___ (1997) (this day decided); Sager v. Basham, 241 Va. 227, 229-30, 401 S.E.2d 676, 677 (1991); Brewer v. Bank of Danville, 202 Va. 807, 815, 120 S.E.2d 273, 279 (1961). In the present case, prior to executing the document in issue, Hayden was merely an employee-at-will, serving as R.K.'s used car manager. R.K., therefore, could have discharged Hayden for any or no reason.

- 4 -

After the document was executed, however, Hayden became an employee for a two-year term, and, during that term, R.K. could not discharge Hayden except for good cause. Clearly, therefore, this advantage to Hayden and inconvenience to R.K. supplied a sufficient consideration to support the May 12 contract.

IV

We next consider whether the alleged contract was certain and definite as to its essential terms. A contract will be enforced if its obligations are reasonably certain. <u>Allen</u> v. <u>Aetna Casualty & Surety</u>, 222 Va. 361, 363, 281 S.E.2d 818, 819 (1981). Even if some terms of a contract are uncertain, it may be read in the light of the surrounding circumstances, and, if from such reading, its meaning may be determined, the contract will be enforced. <u>Smith</u> v. <u>Farrell</u>, 199 Va. 121, 128, 98 S.E.2d 3, 7 (1957). Further, when the entire agreement has not been reduced to writing, parol evidence is admissible, not to vary or contradict the terms of the written instrument, but to show other facts agreed upon in order to establish the parties' entire contract. <u>High Knob, Inc.</u> v. <u>Allen</u>, 205 Va. 503, 506, 138 S.E. 2d 49, 52 (1964).

The trial court concluded that a number of terms were missing from the alleged contract. The court stated that "[t]he document is dated on May the 12th of 1992, but it does not say that it will continue until May the 12th of 1994." The document does state, however, that Hayden agreed to work continuously at

R.K. "for at least two years."  We think a jury, in the light of the surrounding circumstances, reasonably could conclude that the two-year period commenced on the date the document was executed.

The trial court also stated that there was nothing in the document to indicate what Hayden's position would be.  Hayden, however, signed the document as the used car manager, and it is clear from the evidence adduced that he intended to serve in that capacity for the two-year term.

The court further noted that the document did not specify the amount of time Hayden was to work.  Again, Hayden was already working as the used car manager when he signed the document, and a jury reasonably could find that he would continue to work the hours in a day and the days in a week that he had been working.

Finally, the trial court stated that the document made no mention of what Hayden's compensation would be.  From the surrounding circumstances, however, a jury reasonably could have concluded that Hayden's salary would be that which he was receiving at the time he signed the document.

When the document is read in the context of the surrounding circumstances and the evidence is viewed in the light most favorable to R.K., we hold that the trial court erred in ruling that the contract was so indefinite and incomplete as to be unenforceable.

V

We next consider whether the trial court erred in its

rulings regarding R.K.'s damages.

A

The court first ruled that, as a matter of law, R.K.'s damages were not foreseeable because they were not within the contemplation of the parties at the time they entered into the contract.  There are two broad categories of contract damages: direct damages and consequential damages.  Washington & O.D. Ry. v. Westinghouse Co., 120 Va. 620, 627, 89 S.E. 131, 133 (1916).  Direct damages are those that flow "naturally" from a breach of contract; i.e., those that, in the ordinary course of human experience, can be expected to result from the breach, and are compensable.  Consequential damages arise from the intervention of "special circumstances" not ordinarily predictable and are compensable only if it is determined that the special circumstances were within the contemplation of the parties to the contract.  Roanoke Hospital v. Doyle and Russell, 215 Va. 796, 801, 214 S.E.2d 155, 160 (1975).  Whether damages are direct or consequential is a question of law.  The determination whether special circumstances were within the parties' contemplation is a question of fact for a jury.  Id.

In the present case, the trial court correctly ruled that R.K.'s claimed lost profits are consequential damages, and R.K. does not challenge that ruling.  R.K. does contend, however, that the trial court erred in refusing to allow the jury to consider whether the consequential damages were within the contemplation

of R.K. and Hayden when they executed the contract.  We agree.

The evidence makes clear that R.K.'s principal concern in securing the contract was to make certain that Hayden did not leave abruptly and that the purpose of the contract was to assure R.K. that Hayden would remain at R.K. for a period of two years.  Hayden understood R.K.'s concern and recognized the potential of R.K.'s losing business if he left suddenly.  A jury reasonably could conclude that the sole purpose of the contract was to prevent a loss of business and the resulting damages to R.K. and that both parties contemplated the potential for such damages at the time they entered into the contract.  Consequently, we hold that the trial court erred in striking R.K.'s evidence on this ground.

B

The trial court also ruled that, as a matter of law, R.K.'s claim for lost profits was speculative.  In Mullen v. Brantley, 213 Va. 765, 768, 195 S.E.2d 696, 699-700 (1973), we stated the method for proving lost profits:

> When an established business, with an established earning capacity, is interrupted and there is no other practical way to estimate the damages thereby caused, evidence of the prior and subsequent record of the business has been held admissible to permit an intelligent and probable estimate of damages.

Accord Krikorian v. Dailey, 171 Va. 16, 30, 197 S.E. 442, 448 (1938); Forbes v. Wyatt, 143 Va. 802, 809, 129 S.E. 491, 493 (1925); Manss-Owens Co. v. Owens & Son, 129 Va. 183, 205, 105 S.E. 543, 550 (1921).

In the present case, R.K. presented evidence of its profits both before and after Hayden's departure from the business. According to its financial statements, R.K. experienced a dramatic decline in its gross profits for the five-month period following Hayden's departure.  This decline in profits was recorded only in the used car department--there was no such decline recorded in R.K.'s other departments.  Moreover, neither other dealerships in the area nor the automotive industry in general experienced a similar profit decline.  We conclude, therefore, that this evidence of lost profits is not speculative as a matter of law and is sufficient to present a jury issue. Consequently, we hold that the trial court erred in striking R.K.'s evidence on this ground.

C

Finally, because the issue may arise upon remand, we consider the trial court's refusing to allow R.K.'s expert witness to express his opinion concerning the cause of R.K.'s lost profits.  As noted earlier, the accountant would have testified that, to a reasonable degree of professional certainty, R.K.'s loss resulted from Hayden's departure.

We think this issue is resolved by the provisions of Code § 8.01-401.3(B), enacted in 1993, which reads, in pertinent part, as follows:

> No expert or lay witness while testifying in a civil proceeding shall be prohibited from expressing an otherwise admissible opinion or conclusion as to any matter of fact solely because that fact is the ultimate issue or critical to the resolution of the case.

Under the facts of the present case, we think it was error to prohibit the accountant from expressing his opinion regarding causation. As previously discussed, he had analyzed R.K.'s financial statements and had considered the records of other dealerships in the area and of the industry in general. Therefore, he had laid a proper foundation for the formation of his opinion, and the trial court erred in refusing this expert testimony.

## VI

In sum, we hold that the trial court erred in striking R.K.'s evidence and in refusing to allow R.K.'s expert to testify concerning causation. Accordingly, we will reverse and vacate the trial court's judgment and remand the case for a new trial consistent with the views expressed in this opinion.

<u>Reversed and remanded</u>.