UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RYAN INCORPORATED EASTERN,
*Plaintiff-Appellant,*

v.

TOLL BROTHERS, INCORPORATED,
*Defendant-Appellee.*

No. 01-2509

TOLL BROTHERS, INCORPORATED,
*Plaintiff-Appellee,*

v.

RYAN INCORPORATED EASTERN,
*Defendant-Appellant.*

No. 02-1147

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema and Gerald Bruce Lee, District Judges.
(MISC-01-61, CA-01-1940-A)

Argued: May 6, 2002

Decided: August 12, 2002

Before NIEMEYER and GREGORY, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

No. 01-2509 reversed and No. 02-1147 affirmed by unpublished per
curiam opinion. Judge Gregory wrote a separate opinion concurring
in No. 02-1147 and dissenting in No. 01-2509.

## COUNSEL

**ARGUED:** Michael Allen Gatje, WICKWIRE GAVIN, P.C., Vienna, Virginia, for Appellant. Stuart A. Raphael, HUNTON & WILLIAMS, McLean, Virginia, for Appellee. **ON BRIEF:** Brian P. Waagner, Matthew J. DeVries, WICKWIRE GAVIN, P.C., Vienna, Virginia, for Appellant. Jill M. Dennis, Paul D. Flynn, HUNTON & WILLIAMS, McLean, Virginia; Stephen J. Binhak, TOLL BROTHERS, INC., Huntingdon Valley, Pennsylvania, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Ryan Incorporated Eastern ("Ryan") appeals two district court orders denying its requests to compel arbitration: (1) its claim against Toll Brothers, Inc. ("Toll"), and (2) Toll's claims brought against Ryan. Both requests for arbitration stem from disputes over Ryan's performance of contracts to construct for Toll a golf course in Ashburn, Virginia. And both requests for arbitration were based on a clause within Article 5 of the construction contracts, pertaining to "Mechanics' Liens and Claims," which requires arbitration of disputes "for work performed [for] which payment has not been made."

We conclude that, because Ryan's claim was for work performed on the golf course, it fits within Article 5's arbitration clause. Accordingly, we reverse the district court's first order. But we conclude that Toll's claims against Ryan are not arbitrable because we construe the clause to apply only to claims held by Ryan against Toll. Therefore, we affirm the second order.

I

Toll, a Pennsylvania corporation, hired Ryan, a Florida corporation, in 1999 to construct a golf course at the Belmont Country Club

in Ashburn, Virginia. The scope of Ryan's work was defined by three contracts, referred to as "the Golf Course Contract," "the Earthwork Contract," and "the Landbay H-1 Contract." And for this work, Toll agreed to pay Ryan a total lump sum of approximately $17.6 million plus compensation for any design changes initiated by Toll.

All three of the contracts between Ryan and Toll contained a clause in "Article 5. Mechanics' Liens and Claims," providing that:

> No liens will be filed for work not performed, or for work that the Subcontractor [Ryan] has received payment. Furthermore, no lien will be filed for disputed amounts without providing the Contractor [Toll] and the Subcontractor [Ryan] a 30 day period in which to reasonably try to resolve the dispute. If after this resolution period the disputed amount is not resolved, then the Subcontractor may file a lien for the disputed amounts for work performed which payment has not been made. *The Contractor [Toll] and Subcontractor [Ryan] agree that any nonpaid disputed amounts will then be arbitrated, and both parties agree to be bound by the decision of the arbitrator.* Should the Contractor [Toll] prevail in the arbitration, the Subcontractor [Ryan] will promptly release any liens previously filed relating to the unpaid, disputed amounts. Should the Subcontractor [Ryan] prevail in the arbitration, the Subcontractor [Ryan] shall promptly release any liens previously filed relating to the unpaid disputed amounts upon receipt of payment for amounts determined by the arbitration.

(Emphasis added). This clause represents the parties' only contemplation of arbitration.

The project took longer than expected, and, not unexpectedly, there were a number of changes initiated by Toll. Although the contracts required Ryan's price for changes to be negotiated before Ryan commenced work on them, the parties were unable to reach a quick agreement, and Ryan undertook the work on the changes without an agreed-upon price. Then, at the end of the project, on July 27, 2001, Ryan submitted a claim for over $10 million for the work performed pursuant to Toll's changes. The claim included 19 previously submit-

ted change orders that had yet to be resolved, totaling $1.6 million, as well as a request for additional compensation due to Toll's alleged design and survey errors and alleged interference by Toll in Ryan's performance of the work, totaling over $8.7 million ("Ryan's delay and interference claim"). Ryan alleged that Toll's actions forced Ryan to perform work out of sequence, requiring Ryan to maintain labor and equipment on the project for an extra 215 days.

Ryan and Toll failed to settle Ryan's claims, in part because Toll maintained that Ryan's claims violated the contracts' "No-Damage-for-Delay" clause, which provided that Ryan's sole remedy for delay was an extension of time for performance and an accompanying reduction in the liquidated damages Toll could assess. Ryan accordingly sought arbitration pursuant to the arbitration clause in Article 5 of the contracts. Initially, Toll agreed to an arbitration that was to be held in September 2001 and suggested using the interim period pending arbitration to discuss settlement. When settlement discussions foundered, however, Toll took the position that only the 19 change order requests submitted before July 27, 2001 were arbitrable and that Ryan's delay and interference claim was not.

Thus, Ryan commenced this action under 9 U.S.C. §§ 4 and 5 to compel arbitration of its delay and interference claim. The district court denied Ryan's claim on the ground that Ryan's delay and interference claim was a claim for consequential damages and therefore did not fall within the class of arbitrable claims, which was limited to claims for work performed for which Ryan had not yet received payment. Ryan's first appeal is from the district court's order denying arbitration.

Shortly thereafter, Toll commenced an independent action against Ryan, seeking liquidated damages for delay, damages for alleged defects in Ryan's work, and a declaratory judgment that Ryan's claims were contractually barred. Ryan moved to dismiss this action or to stay it, again seeking to have Toll's claim arbitrated by virtue of Article 5. The district court also denied this motion, ruling that Toll's claims did not involve compensation due to Ryan for work performed. Ryan's second appeal is from this order. Ryan's two appeals were then consolidated in this court.

For the reasons that follow, we now reverse the order in the first appeal and affirm the order in the second.

## II

The arbitrability of Ryan's delay and interference claim and Toll's delay claims against Ryan are "matter[s] of contract interpretation." *Am. Recovery Corp. v. Computerized Thermal Imaging Inc.*, 96 F.3d 88, 92 (4th Cir. 1996). "[S]ince contract interpretation is a question of law," our review of "the district court's conclusions [is] *de novo*." *Hendricks v. Cent. Reserve Ins. Co.*, 39 F.3d 507, 512 (4th Cir. 1994).

To determine whether the parties agreed to arbitrate these claims, we begin with the language of Article 5, the central portion of which reads, "The Contractor and Subcontractor agree that any nonpaid disputed amounts will *then* be arbitrated." (Emphasis added). The word "then" refers to the end of a progression that is initiated by a "30 day period in which to reasonably try to resolve the dispute" and is followed by an opportunity for Ryan to "file a lien for the disputed amounts for work performed which payment has not been made." Completing this progression, it becomes clear that the parties intended to arbitrate only claims that could not be resolved through negotiation, for "*disputed amounts for work performed* which payment has not been made." (Emphasis added). Our focus, therefore, must be directed to whether the claims in this case fall within that class of disputes, as only those are arbitrable.

The district court followed the same reasoning and found a distinction between Ryan's first 19 change order claims, which it concluded fell "squarely . . . within the arbitration clause," and Ryan's claim for delay and interference, which it concluded fell outside that clause's scope. We are, however, unable to find support under Virginia law for this distinction.

Virginia law would treat Ryan's delay and interference claim as one for an "unpaid disputed amount," and it would not distinguish that claim from Ryan's other change order claims. Despite the fact that Ryan's alleged damages were a consequence of Toll's alleged breach of contract — i.e., Toll's alleged errors and interference — they are not classified under Virginia law as "consequential damages." Unlike

consequential damages, which "arise from the intervention of 'special circumstances' not ordinarily predictable," Ryan's claimed damages were alleged simply to be the extra costs for labor and equipment brought on by having to perform work out of sequence and thus were the "natural" and "ordinary" result of Toll's alleged breach of contract. *Roanoke Hosp. Ass'n v. Doyle & Russell, Inc.*, 214 S.E.2d 155, 160 (Va. 1975); *see also R.K. Chevrolet, Inc. v. Hayden*, 480 S.E.2d 477, 481 (Va. 1997); *Morris v. Mosby*, 317 S.E.2d 493, 497 (Va. 1984). Indeed, Virginia law expressly treats "extended financing costs," brought on by "delay in completion" of large contracts, as direct damages. *Roanoke Hosp. Ass'n*, 215 S.E.2d at 160-61. As such, Ryan's delay and interference claim is no different than any other claim for a "disputed amount[ ] for work performed which payment has not been made."

We therefore hold that Ryan's delay and interference claim falls within the class of claims contemplated by Article 5 and therefore is arbitrable. In so concluding, however, we do not imply, one way or the other, whether the claims are permitted by the contract or justified by the facts. Those issues should be resolved in the arbitration.

Unlike Ryan's delay and interference claim, however, Toll's claims against Ryan cannot be characterized as claims for "disputed amounts for work performed which payment has not been made," and therefore they fall outside the scope of Article 5. To begin with, Toll's claims are in the nature of a refund of payment; Toll did not perform any work for which it had to be paid. Moreover, Article 5 sets forth a progression for Ryan as the contractor to follow when it has a claim against the owner Toll.[1] There is no suggestion in Article 5 — or anywhere else in the contracts — that the same progression applies when Toll, as the owner, has a claim against the Ryan as the contractor. As Article 5 applies only to claims by the contractor against the owner, Toll's claims against Ryan are clearly outside Article 5's scope. Accordingly, even to the extent that Toll's claims are preemptive defenses to Ryan's claims, there is no basis in the contracts for con-

---

[1]The contract actually refers to Toll as the contractor and Ryan as the subcontractor. But for contractual purposes, they are functioning as owner and contractor, respectively.

cluding that the parties intended for those claims to be resolved by arbitration.

In sum, we conclude that the district court erred in denying Ryan's petition to compel arbitration of its delay and interference claim, but was correct in denying Ryan's motion to stay litigation of Toll's claims pending arbitration.[2]

No. 01-2509 - *REVERSED*

No. 02-1147 - *AFFIRMED*

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I concur in the resolution of No. 02-1147, affirming the district court's order denying Ryan's motion to compel arbitration of Toll's claims, for the reasons stated by the majority. I respectfully dissent, however, from the majority's resolution of No. 01-2509, reversing the district court's order denying Ryan's motion to compel arbitration of its "delay and interference claim." I would affirm the district court. The majority is correct that the "delay and interference claim" is a claim for direct, not consequential damages. But I believe that the arbitration clause was intended to resolve disputes over amounts due for work performed, not damage claims arising from breach of contract.

As the majority apparently recognizes, at least a portion of Ryan's claim is for breach of contract. To be sure, Ryan also argues (confusingly) that the contract was somehow modified by Toll's "delay and interference." But, ultimately, Ryan's claim is that Toll breached the contract by violating its contractual "duty to cooperate and not to interfere with, hinder, or prevent Ryan's performance." Appellant's Reply Br. at 9. This breach, Ryan argues, gives rise to a legal claim for direct damages, measured by increased expenses as well as lost profits. J.A. 526-608.

---

[2]As the Declaration of Reza Nikain, PE, PMP, is not relevant to our analysis, we deny as moot Ryan's March 19, 2002 Motion to Correct Record on Appeal.

The majority also appears to recognize that the arbitration clause relates to claims that could be enforced by a mechanic's lien. The clause requires a thirty day negotiation period, after which, if the disputed amount for work performed is not paid, Ryan may file a lien. Under Virginia law, "[a]lthough [ ] a lien is a creature of statute, the lien must have its foundation in a contract, with which the lien must correspond." *First American Bank of Virginia v. J.S.C. Concrete Construction, Inc.*, 523 S.E.2d 496, 497 (Va. 2000); *Sergeant v. Denby*, 12 S.E. 402, 402 (Va. 1890). A mechanic's lien is a statutory mechanism to enforce an owner's obligation to pay the agreed upon price. *See* 12B Michie's Jurisprudence, *Mechanic's Liens* § 28 (1992 & 2001 Supp.) ("The lien of a contractor is for the contract price or other compensation agreed upon."). A mechanic's lien is not the equivalent of a common law suit for breach of contract. "[T]he object of the [mechanic's lien statute] is to give those who, by their labor and material, have enhanced the value of the building the security of a lien thereon to the extent they have added to its value[.]" *United Masonry, Inc. v. Jefferson Mews, Inc.*, 237 S.E.2d 171, 182 (Va. 1977). In contrast, Ryan's breach of contract claim is for costs, incurred by Ryan, associated with Toll's alleged interference with Ryan's contractual performance. The claim is not for value-enhancing "work performed" of the type that would give rise to a mechanic's lien, but rather for damages resulting from Ryan's inability to perform work. Because Ryan claims that it was damaged by Toll's delay and interference, and is not simply seeking to enforce Toll's promise to pay the agreed upon price, the district court was correct in holding that the claim was not arbitrable.*

I concur in the resolution of No. 02-1147. I respectfully dissent, however, from the majority's decision, in No. 01-2509, to reverse the district court.

---

*As the above indicates, the distinction between direct and consequential damages is irrelevant.