# CIRCUIT COURT OF THE CITY OF NORFOLK

Norfolk Community
Services Board

v.

Linda M. Berardi,
Jill D. McGlone,
Anthony Crisp,
Brenda Wise,
and George Pratt

Case No. (Civil) CL11-2968

By Judge Everett A. Martin, Jr.

February 15, 2012

This matter came before the court on February 13, 2012, on the amended complaint and demurrers, pleas in bar, and motions filed by the defendants.

The plaintiff, the "CSB," complains that Jill D. McGlone, a former employee, improperly received a salary and other benefits from the time of her suspension on April 14, 1998, until May 15, 2010. (Nos. 14, 25.) (The numbers in parentheses refer to paragraphs of the amended complaint.) The

CSB seeks to recover the value of the salary and benefits from McGlone and these four other defendants.

Linda Berardi was the CSB's Human Resource Officer from 2002 until after McGlone's termination. (Nos. 5, 50.) Her duties included compensation, classification, "payroll enrollment and transactions," and benefits administration. (No. 35.)

Anthony Crisp was the Director of Clinical Services for the CSB, and he suspended McGlone. (Nos. 4 and 14.) His duties included the coordination of substance abuse services, employee performance reviews, and disciplinary actions. (No. 71.)

Brenda Wise was the Director of Administration for the CSB. (No. 3.) Her duties included personnel and financial management and the supervision of Berardi. (No. 104.)

George Pratt was the Executive Director of the CSB from 1996 until March 31, 2008. (No. 6.) He was responsible for the removal of any employee, the implementation of the CSB's policies, and the administration of the budget. (No. 143.)

The CSB has sued McGlone for unjust enrichment (Count One), Berardi, Crisp, Wise, and Pratt for fraud (Counts Two, Three, Four, and Six) and negligence (Counts Seven, Eight, Nine, and Ten), and Pratt for breach of contract (Count Five).

## Unjust Enrichment

An action for unjust enrichment lies when one has money of another that he has no right to retain. *Robertson v. Robertson*, 137 Va. 378, 119 S.E. 140 (1923). McGlone does not contest that the CSB has adequately pleaded this claim, but she has filed a plea in bar of the statute of limitations claiming the CSB may not recover any amounts paid to her before April 12, 2008. The CSB has filed an objection to the Court's hearing the plea in bar, and it demands that the facts be determined by a jury.

If there are disputed facts that must be resolved to allow the Court to rule on a plea in bar, either party is entitled to have a jury determine those facts. *Hawthorne v. VanMarter*, 279 Va. 566, 692 S.E.2d 226 (2010). Although McGlone's pleading is styled as a special plea in bar, it is not actually so as it does not bar the CSB from recovering, but, if granted, would greatly reduce any recovery. Nonetheless, the Supreme Court has noted that a party may demand a jury trial of *any issue* in an action at law. *Bethel Investment Co. v. City of Hampton*, 272 Va. 765, 769, 636 S.E.2d 466, 470 (2006); Code of Virginia § 8.01-336(B). Thus, it would appear the CSB should have a jury trial on McGlone's plea if there are disputed facts.

But are there disputed facts on her plea? I find there are not. The issue here is not when the limitations period began to run, as in an action for

fraud. On a claim of unjust enrichment, the limitations period runs from the date money or property is given to the defendant.

In *Belcher v. Kirkwood*, 238 Va. 430, 383 S.E.2d 729 (1989), the plaintiff gave money to the defendant on divers dates. When the defendant did not repay the money, the plaintiff sued. The defendant pleaded the statute of limitations. Even though the case had been transferred to equity, the Supreme Court held the claims were "cognizable at law" and the three year statute of limitations for oral contracts applied to claims for unjust enrichment and barred recovery for monies paid more than three years before the suit was filed. 238 Va. at 432-33, 383 S.E.2d at 730-31. As in *Belcher*, the claim here is for money damages, the traditional legal remedy, and Va. Code § 8.01-230 does not apply as the relief sought is not solely equitable.

The CSB claims the tolling provision of Va. Code § 8.01-229(D) allows it to recover from McGlone the damages it incurred more than three years before it filed suit. That sub-section provides, as applicable:

> When the filing of an action is obstructed by a defendant's . . . using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

The CSB conceded at argument that McGlone took no action to obstruct the filing of this action, but it claims that other defendants did. The CSB offered no authority that would apply this sub-section to one defendant when another defendant acted to obstruct the filing of an action, and, in the absence of such authority or, perhaps, a relationship that would make the non-obstructing defendant vicariously liable for the acts of the obstructing defendant, I decline to so construe the statute. See former Va. Code § 8-33; *Culpeper Nat'l Bank v. Tidewater Improv. Co.*, 119 Va. 73, 83-83, 89 S.E. 118, 121 (1916).

I find the CSB may recover from McGlone for unjust enrichment for salary paid and benefits bestowed within the three years before the suit was filed, that is, since April 12, 2008. The CSB's claim for salary paid and benefits bestowed before that date is time barred.

## Fraud and Negligence

The CSB sues Berardi, Crisp, Wise, and Pratt for actual or constructive fraud and negligence or gross negligence. Actual fraud is a false representation of a material fact made intentionally and knowingly with the intent to mislead, which representation is relied upon by the plaintiff and causes him damage. Constructive fraud differs in that the representation need only be made innocently or negligently and there need not be an intent

to mislead. *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387 (1994).

The defendants demur contending these claims are barred by what is known as the source of duty rule. This rule is designed to maintain the separation of the law of contracts from that of torts. The law of contracts exists to protect the expectations of parties to a contract. The damages a plaintiff may recover in a contract action are usually rather limited. Because of the limited damages that may be recovered in a contract action, lawyers for plaintiffs often try to sue in tort, where the damages can be much higher. The primary purpose of the law of torts is the protection of persons and property from injury, and it affords a remedy only for violations of common law and statutory duties involving the safety of persons and property that are imposed to protect the broad interests of society. *Filak v. George*, 267 Va. 612, 594 S.E.2d 610 (2004).

A second reason a lawyer for a plaintiff may seek to sue in tort (especially for fraud) is the statute of limitations. In actions for breach of contract, the period of limitation begins to run when the contract is breached and not when the resulting damage was discovered. Va. Code § 8.01-230. For a claim of fraud, the limitation period begins to run when the fraud is discovered or by the exercise of due diligence reasonably should have been discovered. Va. Code § 8.01-249(1).

In deciding whether a plaintiff may sue in tort, the Court examines the source of the duty the defendant owed the plaintiff. If the act complained of would not give rise to a cause of action in the absence of a contract between the parties because no duty to do what is complained of existed apart from the contract, then the action is founded on contract, not tort. However, if the relation between the plaintiff and the defendant is such that a duty arises from the relationship, irrespective of the contract, then the action is one for tort. *Richmond Metropolitan Auth. v. McDevitt*, 256 Va. 553, 507 S.E.2d 344 (1998). The actions of one breaching a contract can be both a breach of contract and a tort; however, to allow the plaintiff to sue in tort, the duty the defendant tortiously or negligently breached must be a common law or statutory duty, not one existing between the parties solely by virtue of a contract. *Foreign Mission Board v. Wade*, 242 Va. 234, 409 S.E.2d 144 (1991); *Kaltman v. All-American Pest Control*, 281 Va. 483, 706 S.E.2d 864 (2011).

The duties Berardi, Crisp, Wise, and Pratt are alleged to have violated and that are the bases for the fraud claims are set forth in paragraphs 35-140 and 164-165, pages 7-33 and 39-40) of the amended complaint.

The CSB alleges Berardi, *inter alia*, failed to conduct an investigation of McGlone's violation of CSB policies (No. 49), improperly treated McGlone as being on administrative leave with pay (No. 50), did what was necessary to ensure McGlone continued to be paid (No. 51), failed to advise Crisp to perform a performance evaluation on McGlone (No. 55),

reviewed numerous labor reports indicating McGlone had used leave time and not done any work (Nos. 57-59), misrepresented that McGlone was entitled to be paid (No. 60), misrepresented that McGlone was entitled to health benefits (No. 66), and misrepresented that McGlone was entitled to pay increases (No. 69).

The CSB alleges Crisp, *inter alia*, failed to resolve McGlone's suspension without pay (No. 75), signed numerous labor reports showing McGlone was on administrative leave with pay and had done no work (Nos. 76-82), submitted budgets including funding for McGlone's position (No. 91), and failed to complete a performance evaluation for McGlone (No. 97).

The CSB alleges Wise, *inter alia*: failed to complete an investigation of McGlone's conduct that led to her suspension (No. 106), failed to resolve McGlone's suspension (No. 109), failed to exercise oversight of McGlone's personnel records (No. 111), failed to correct McGlone's accrual of annual leave (No. 120), presented a financial summary to the board of directors identifying McGlone's position as filled (No. 126), and presented budgets recommending funding to McGlone (No. 129).

The CSB alleges Pratt presented "performance contracts" to the board of directors that indicated McGlone's position would result in some contribution of services to the CSB's clients. (Nos. 155-157, 164.)

It is evident that all these duties alleged to have been violated arose out of each defendant's employment with the CSB. The CSB admits this throughout the amended complaint. (Nos. 49, 52-55, 62, 96-97, 110-111, 120, 166-172, 174-177, 179-188, 190-192.) The relation of employer and employee can only exist by virtue of a contract. *Humphries v. Boxley Bros. Co.*, 146 Va. 91, 97, 135 S.E. 890, 891 (1926). A "public officer" does not perform his duties under contract but by virtue of the law creating the office. *Mann v. City of Lynchburg*, 129 Va. 453, 460, 106 S.E. 371, 373 (1921). The CSB has not pleaded that any defendant was a public officer. At argument, the CSB relied on *Hilb, Rogal & Hamilton Co. v. DePew*, 247 Va. 240, 440 S.E.2d 918 (1994), to claim an employment relationship need not be contractual. However, that case only held that an employee's breach of contractual duties after he ends his employment may constitute an improper method to support his former employer's claims against him for intentional interference with an at-will contract with a third party and conspiracy to interfere with that contract.

The allegations here are similar to those the Supreme Court held improper in *Richmond Metropolitan Auth.* The defendant there, a contractor, had built a large structure for the Authority. More than five years after the structure was completed, the Authority discovered that some of the work contracted for had been done improperly or not at all. The Authority sued the contractor for breach of contract and actual and constructive fraud. The trial court dismissed the breach of contract claim on a plea of the statute of limitations, and the Authority did not appeal that ruling.

The Authority also sued in fraud hoping to avoid the statute of limitations. The bases of the Authority's fraud claims were: (1) the defendant's submission of false payment applications certifying the work had been performed in accordance with the contract documents, and (2) the defendant's physical concealment of its non-compliance with the design criteria. The Supreme Court held the claim for constructive fraud was "nothing more than allegations of negligent performance of contractual duties and are, therefore, not actionable in tort. A tort action cannot be based solely on a negligent breach of contract." 256 Va. at 559, 507 S.E.2d at 347. With respect to the claim for actual fraud, the Supreme Court held each misrepresentation "related to a duty or obligation that was specifically required by the . . . [c]ontract." *Id.*

At argument, the CSB relied exclusively on these defendants' breach of fiduciary duty as the common law duty that supports its fraud and negligence claims. It is certainly true that an employee has a fiduciary duty not to act adversely to the employer's interest, *Hilb, supra.* However, this duty arises out of the contractual employer-employee relationship, and the Supreme Court has rejected the CSB's argument. In *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 645 S.E.2d 290 (2007), the Court held that an insurance agent's breach of his fiduciary duty to his principal was not an independent tort that would allow a fraud claim as the fiduciary duty arose *ex contractu.*

In the absence of their employment with the CSB, the defendants would have had none of the duties pleaded. Neither the common law nor a statute imposes any of them. Thus the demurrers to the claims of fraud and constructive fraud against Berardi, Crisp, Wise, and Pratt must be sustained and the claims dismissed.

The same rationale applies to the negligence claims. The CSB alleges Berardi, Crisp, Wise, and Pratt owed it a duty to execute their responsibilities with "a reasonable degree of care and a duty not to waste" its assets. The CSB then re-states many of the acts alleged in its fraud claims. All of the duties breached in the negligence counts arose out of the defendants' employment. None are common law or statutory duties.

It appears a public officer may be indicted for misfeasance, the improper performance of a lawful act, a misdemeanor at common law. 1987-1988 *Opinions of the Attorney General* 70; *Rex v. Bembridge*, 3 Douglas 327, 99 Eng. Rep. 679 (1783); *Anonymous*, 6 Modern 96, 87 Eng. Rep. 853 (1703); Va. Code §§ 1-200, 18.2-12; *Donnelley v. United States*, 276 U.S. 505, 516, 48 S. Ct. 400, 72 L. Ed. 676 (1928). Whether the government has a civil cause of action for misfeasance against former public officers is a question I have not been asked to decide.

## Breach of Contract by Pratt

I find it is premature to rule on Pratt's demurrer to this count because I find that his motion craving *oyer* ought to be granted. The CSB alleges it and Pratt entered into written contracts each year from 1998 until 2007 and one contract covering July 1, 2007, through March 31, 2008 (No. 141), and that the contracts contained an enforcement provision (No. 161) "in the event the CSB [sic] was found not to be in compliance." The contracts are not attached to the amended complaint.

The CSB also claims that Va. Code § 8.01-229(D), previously discussed, tolls the statute of limitations on this claim. The Supreme Court has previously ruled that mere silence by the defendant is not concealment, but there must be some affirmative act of misrepresentation designed to prevent discovery of the cause of action that does prevent its discovery. *Culpeper Nat'l Bank, supra.* Constructive fraud will not toll the running of the statute of limitations. The character of the fraud necessary to toll the statute must involve moral turpitude. *Richmond Redevel. & Housing Auth. v. Laburnum Const. Co.*, 195 Va. 827, 840, 80 S.E.2d 574, 582 (1954).

What is Pratt alleged to have done? In short, it is alleged he "knew or should have known" that Berardi, Crisp, and Wise were acting in such a manner that McGlone continued to be paid while not working, that he submitted annual "performance contracts" to the CSB's board of directors identifying the full time employees the CSB would employ and the costs necessary to compensate them, and that McGlone's position was among them. (Nos. 145-158.)

I find it curious that the CSB alleges Pratt "knew or should have known" certain things. The "knew or should have known" standard is usually applied in tort cases, not contract actions. I also find it curious that the CSB never unequivocally alleges that Pratt knew McGlone was being paid while not working. The CSB alleges Berardi knew this "as early as 2002" (No. 37), that Crisp knew this in 1998 (Nos. 14, 82), and that Wise knew it in 2003 at the latest (No. 40).

These allegations simply do not support a claim that Pratt concealed a cause of action the CSB had against him for breach of contract or obstructed its filing. Even if I were to accept the CSB's argument that the actions of Berardi, Crisp, and Wise can toll the statute of limitations on this claim, the amended complaint does not show actions taken to conceal the cause of action; rather, it is replete with actions taken to document improper payments.

I thus grant Pratt's plea in bar in part. As the contracts are written, a five year statute of limitations applies to this claim. Code of Virginia § 8.01-246(2). The CSB filed its original complaint on April 12, 2011; thus, any breaches of Pratt's contract occurring before April 12, 2006, are time barred.

The CSB shall produce to Pratt and file with the Clerk copies of Pratt's contracts for July 1, 2005, to June 30, 2006, July 1, 2006, to June 30, 2007, and July 1, 2007, to March 31, 2008.

In view of these rulings, I need not decide the other matters the defendants have raised.

## May 23, 2012

This action now comes on Pratt's demurrer (which included a brief) and supplemental brief to Count Five of the amended complaint, alleging breach of contract. The CSB produced Pratt's employment contracts on March 1 in response to the Court's order of February 15. Pratt raises four grounds. First, the remedy the contract provides, termination, is exclusive. Second, the damages claimed were not a result of the breach alleged. Third, the breach was concealed from him. Fourth, the contract is too vague to establish a standard to judge his actions. The CSB filed no brief.

I overrule the third ground as I believe it to be a question of fact.

### Pratt's Duties

By the common law, an employee is to use ordinary and reasonable skill, care, diligence, and attention in the discharge of the duties of his position unless an express contract imposes a higher degree of skill, etc. *Hatton v. Mountford*, 105 Va. 96, 103, 52 S.E. 847, 849 (1906). Pratt's annual contracts did not require much, if anything, more. He was to accomplish his duties "professionally and in a manner consistent with the performance expectations established by the [CSB]." Paragraph 2. Examples of his extensive duties and "performance requirements" were attached to his 2005-2006 contract as Exhibit A. His other contracts seem to be identical except for the change of fiscal year and the probably inadvertent omission of Exhibit A.

The duties and performance requirements of Exhibit A that Pratt had as they related to McGlone's employment were:

*Supervision Exercised*: Is the appointing and removing authority for Services Board staff. . . .

7. Is accountable to the Board for providing fiscal, budgetary, and programmatic oversight through a system of reports regularly submitted by Board-operated and contractual programs.

8. Directs the overall development and administration of the budgets for Board operated programs. . . .

13. Serves as the chief personnel officer of the Board. . . .

15. Directly supervises the Board's administrative/management staff.

*Performance Requirements*: Skills in public administration and management skills such as . . . budgeting . . . ability to manage CSB program operations on a day-to-day basis utilizing independent initiative and judgment. . . .

When Pratt's duty as "chief personnel officer" and "removing authority" is considered in light of the common law, he certainly had a duty to pay only employees who worked. I overrule the fourth ground of the demurrer.

### Exclusivity of Remedy

The contract provided for Pratt's involuntary termination in paragraph 10(b). It gave him a right to a hearing before the board. It also provided he would be paid for accrued annual leave. Pratt was not involuntarily terminated but retired. Thus paragraph 10(b) does not even apply. Pratt nonetheless claims this is the CSB's only remedy. The contract was otherwise silent on remedies or damages.

A party may claim common law damages for a breach of contract unless the contractual remedy is clearly stated to be exclusive. *Bender-Miller Co. v. Thornwood Farms, Inc.*, 211 Va. 585, 179 S.E.2d 636 (1971). I overrule the first ground of the demurrer.

### Damages Resulting from the Breach

The CSB claimed what it paid McGlone from 1998 through 2010 as damages from Pratt. By the order of February 15, I barred the CSB's claim for any breaches of contract occurring before April 12, 2006.

There are two categories of contract damages: direct and consequential. Direct damages are those that arise naturally or ordinarily from a breach of contract; they are damages that, in the ordinary course of human experience, can be expected to result from a breach. *Roanoke Hosp. v. Doyle and Russell*, 215 Va. 796, 801, 214 S.E.2d 155, 160 (1975). Virginia's law of direct and consequential damages has it origin in *Hadley v. Baxendale*, 9 Ex. 341, 354-55, 156 Eng. Rep. 145, 151 (1854). Even though our Supreme Court has stated in *dictum*, that our adoption of the English common law ends in 1607, *Commonwealth v. Morris*, 281 Va. 70, 705 S.E.2d 503 (2011), I assume the law of direct and consequential damages *ex contractu* remains unchanged. In the ordinary course of human experience, employees are not paid for twelve years for not working. The damages claimed are not direct.

Consequential damages arise from the intervention of special circumstances not ordinarily predictable. Such damages are compensable only if it is determined the special circumstances were within the contemplation of both parties when the contract was executed. "Contemplation includes what was actually *foreseen* and what was reasonably *foreseeable*." *Roanoke Hospital,*

*supra* (emphasis added). In most of its decisions, our Supreme Court has held that whether special circumstances were within the contemplation of the parties is a question of fact. *Roanoke Hosp., supra; Virginia Poly. Inst. v. Interactive Return Service, Inc.*, 267 Va. 642, 654, 595 S.E.2d 1, 7 (2004); *R. K. Chevrolet, Inc. v. Hayden*, 253 Va. 50, 56, 480 S.E.2d 477, 481 (1997). In one case, the Court has held it is "generally" a question of fact. *Fairfax County R. & H. Auth. v. Hurst & Assoc.*, 231 Va. 164, 167, 343 S.E.2d 294, 296 (1986). Professor Corbin holds it is a question of fact "subject to the usual supervisory power of the court." 11 *Corbin, on Contracts*, § 56.7 (2005).

Consequential damages are based on future events not known at the time of the execution of the contract. They arise from "circumstances not ordinarily predictable;" the circumstances allowing such damages are "actually *foreseen*" or "*reasonably foreseeable*." The payments to McGlone that are complained of began more than *seven years before* Pratt signed the first contract at issue. It is difficult to believe Pratt contemplated making himself financially liable for damages that already existed and continued to accrue when he signed the contracts.

The general American rule holds that an employer's damages for an employee's breach of a contract of employment are the excess cost of a replacement employee. Although the "courts generally recognize the possibility of an award of consequential damages against the breaching employee, the rules of foreseeability, mitigation, and certainty have been so strictly applied as to indicate a strong policy against such awards against employees." 11 Corbin, *supra*, at § 60.8. However, Corbin noted in the same section that that Virginia law does allow an employer to recover lost profits from a breaching employee, citing *R. K. Chevrolet, supra*. It might be thought that the squandering of public monies by a public agency is akin to the lost profits of a private enterprise. The contract in *R. K. Chevrolet* was as bare-bones as Pratt's contracts, and the Supreme Court there approved the recovery of lost profits.

Employment contracts in Virginia are largely governed by the common law. Custom is the foundation of the common law, and the decisions of the courts are its monuments. 1 W. Blackstone, *Commentaries on the Laws of England*, pp. 63-64, 67 (1765). Although some might wish it otherwise, it is certainly not the custom in Virginia for a public employee to be held liable *ex contractu* for the mismanagement of his agency. There are statutory bonding requirements for local officers and employees. Code of Virginia §§ 2.2-1840(B), 15.2-1527 *et seq*. This is not an action on a bond. The CSB's failure to cite any authority from any Virginia court holding a public employee so liable establishes the lack of any such custom.

In recent years, some companies, especially financial companies, have begun to insert so-called "clawback" provisions in the employment contracts of highly paid employees. These provisions allow the employer to recoup

part of the employee's or former employee's compensation if he causes the employer damages that arise or are discovered after the employee has been compensated or after his employment has ended. There is no such provision in Pratt's contracts. If Virginia municipalities wish to make the heads of agencies personally liable for financial mismanagement, they should expressly so provide by contract and expect to pay higher salaries and find fewer people willing to take the positions.

I sustain the second ground of Pratt's demurrer to Count Five without leave to amend.