Culpeper N. Bank *v.* Tide. I. Co., 119 Va. 73.   73

Syllabus.

## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## CULPEPER NATIONAL BANK, INC. v. TIDEWATER IMPROVEMENT COMPANY, INC.

### June 8, 1916.

### Absent, Cardwell, J.

1. PLEADING—*Plea to Jurisdiction by Corporation—Appearance by Counsel.*—A plea to the jurisdiction by a corporation must be by attorney, as it cannot appear in person.

2. CONTRACTS—*Fraud—Implied Contract.*—If two or more persons conspire to cheat a third and together consummate an act by which they defraud such person of a sum of money, the law will imply a joint promise on their part to restore it. But, in the case at bar, no such conspiracy is established.

3. PRINCIPAL AND AGENT—*Knowledge of Agent—Corporations—Fraud of Officers—Presumption.*—The general rule that the knowledge of an agent acquired in executing his agency is imputed to the principal and charges him with the liabilities which such knowledge imposes, has no application to an officer of a corporation who, in an independent transaction for his own benefit, seeks to perpetrate a fraud on the corporation as well as upon a third person. In such case it is presumed that the officer did not communicate his knowledge to the corporation, and the latter is not chargeable with constructive notice thereof.

4. LIMITATION OF ACTIONS—*Bank Account—When Statute Begins to Run.*—The statute of limitations on a claim against a bank for the proceeds of a note discounted by it, and which it failed to credit on the customer's check account, does not begin to run from the date of the discount of the note, but from the close of the account between the bank and the customer.

5. LIMITATION OF ACTIONS—*Suspension—Concealment—Fraud—Silence.*—The concealment of a cause of action which will prevent the running of the statute of limitations must consist of some trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence. Mere silence is not sufficient. The fraud which will relieve the bar of the statute must be of that character which involves moral turpitude and must have the effect of debarring or deterring the plaintiff from his action.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Grimsley & Miller*, for the plaintiff in error.

*Daniel Grinnan* and *Jeffries & Jeffries*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is an action of assumpsit brought by the Tidewater Improvement Company against the Culpeper National Bank and S. Russell Smith to recover the proceeds of a note, which it is alleged was drawn by the Tidewater Improvement Company, endorsed by H. B. Miller and J. Clifford Miller and delivered to S. Russell Smith, as president of the Culpeper National Bank to be by it discounted and the proceeds placed to the credit of the plaintiff. The declaration avers that the Culpeper National Bank, through S. Russell Smith, who was its president, accepted the note for discount for the benefit of the plaintiff, as aforesaid, and then and there agreed to place the proceeds of the discount to the credit of the plaintiff; that S. Russell Smith was then president of the bank and its managing officer, and controlled and did the discounting of paper which was discounted by the bank. The declaration further avers that on the 9th of August, 1907, the Culpeper National Bank, through its president and managing officer, S. Russell Smith, discounted the

note so presented, the proceeds being $1,980, but failed to place that sum to the credit of the plaintiff, as it had agreed to do, but on the contrary, without the knowledge or assent of the plaintiff, placed the said sum, to-wit, $1,980, to the credit of S. Russell Smith, individually, at his instance and request.

The defendant Smith made no defense to the action. The Culpeper National Bank pleaded non assumpsit and the three and five years statutes of limitations. The case was tried before a jury, which rendered a verdict in favor of the plaintiff, upon which the court entered judgment, and thereupon a writ of error was awarded which brings in question certain rulings of the trial court.

The facts are substantially as follows:  In 1907 the Culpeper National Bank was engaged in the banking business at Culpeper, Virginia.  S. Russell Smith was its president and managed its loan and discount business.  He was also at the same time treasurer of Culpeper county and treasurer of the Tidewater Improvement Company, the plaintiff corporation, and had possession of its moneys and received and paid out the same, and as such treasurer had an account with the Culpeper National Bank.  Prior to August 9, 1907, and also subsequent thereto, plaintiff in error discounted for the defendant in error certain notes, the proceeds of which were placed to the credit of Smith as treasurer of the plaintiff.  The plaintiff also had another account with the bank in the name of John B. Miller, president of the Tidewater Improvement Company, which was opened on the 6th day of June, 1908, and closed on the 9th day of November, 1909.  On the 9th day of August, 1907, the bank discounted a note of the plaintiff for $2,000, the proceeds of which were placed to the individual credit of S.

Russell Smith, at his direction.   This note was by the bank re-discounted with the Alexandria National Bank and subsequently paid by the check of S. Russell Smith, president of the Tidewater Improvement Company, drawn on the Culpeper National Bank and paid by it.   Smith retired from the treasurership of the plaintiff in the fall of  1908, and the balance of $62.57 to his credit with the bank was, at the direction of John B. Miller, president, and who had also succeeded Smith as treasurer, and J. Clifford Miller, an active director and guiding spirit of the plaintiff, transferred to the account of John B. Miller, president of the Tidewater Improvement Company.   In 1912 J. Clifford Miller succeeded John B. Miller as plaintiff's president and treasurer, and has so remained until the present time.

In 1908 Smith became greatly involved financially, was compelled to resign as president of the bank, was threatened with prosecution for criminal conduct in the management of its affairs, was also found short in his accounts as treasurer of Culpeper county, and his sureties, including John B. Miller, plaintiff's president, furnished him a large sum of money to cover his shortage as treasurer.

The question upon which there was a conflict of evidence is, in what capacity did S. Russell Smith hold the note discounted August 9, 1907, when at his direction it was discounted at the bank and the proceeds placed to his credit—whether as treasurer or agent of the plaintiff, the Tidewater Improvement Company, or as agent of the Culpeper bank?

On behalf of the plaintiff, J. Clifford Miller testified that the note was sent to the bank for discount and the proceeds were to be placed to the general credit of the plaintiff.   He does not, however, claim to have any inde-

pendent recollection of the transaction, but says that his testimony in this respect was founded upon his rule in forwarding notes to be discounted for the plaintiff; that he always addressed the letters enclosing such notes to the Culpeper National Bank or to S. Russell Smith, president of the bank, yet he could not produce any copy of any letter so addressed, though copies thereof were kept, but could not then be found, and he thought they must have been lost in moving the plaintiff's office and place of business.

Turning to pp. 89-90 of the record, we find that the witness, Miller, testified as follows upon this point:

"By the Court: Mr. Miller, after this note was made as you have testified, do you recall whether you sent it to the Culpeper National Bank by letter, or whether you gave it to Mr. S. Russell Smith to be carried to the bank?

"Witness: Judge, my best recollection is that I mailed it to them. I have looked over our files for 1907 and have been unable to find the letter. I do not recall ever having taken the note to the Culpeper National Bank and asked them to discount it.

"The Court: The point of my question is, are you certain whether you enclosed this note to the Culpeper National Bank for discount and credit to the Tidewater Improvement Company, or whether that note was carried by Mr. S. Russell Smith, who was then the treasurer of the Tidewater Improvement Company and also the president of the Culpeper National Bank—whether the note was taken and carried by him to the bank, or whether you mailed that note directly to the Culpeper National Bank?

"Witness: Well, I wouldn't like to state that positively, except that I would state that it was my custom, when endorsing notes—

"The Court (interrupting): You stated the custom before, that is why I asked you the question. I want to know whether you are prepared to state on oath which happened?

"Witness: I cannot state. But I know this, that I did not carry the note to the Culpeper National Bank.

"The Court: The point of my question is whether you mailed the note to the bank, or whether Mr. Smith was entrusted with the note for the purpose of discount at the Culpeper National Bank.

"Witness: I cannot tell you that."

The first error assigned is thus stated in the petition: "Petitioner's first bill of exception is to the action of the trial court in sustaining a motion of the plaintiff to strike out certain pleas in abatement filed by it, but as the same question presented on said pleas was subsequently presented on motion to exclude the plaintiff's evidence, as set out in bill of exception No. 2, and also in petitioners' instruction No. 5, refused by the court and set out in bill of exception No. 4, . . . Therefore, it will be useless to discuss this question on each exception, but we will present it to the court under one head."

This suit was brought in the Hustings Court, Part II, of the city of Richmond, under section 3215 of the Code, which provides that a suit may be brought in any county or corporation wherein the cause of action, or any part thereof, arose, although none of the defendants reside therein; the contention of the plaintiff being that the cause of action arose within the city of Richmond, and S. Russell Smith, one of the defendants being found within the city, process was served upon him and then sent to the county of Culpeper for service upon the Culpeper National Bank.

The defendant, the Culpeper National Bank, filed a plea in abatement in its own name, in which it denies that any part of the supposed cause of action arose within the city of Richmond or within the jurisdiction of the hustings court, but that every part of it arose within the county of Culpeper, and that the circuit court of that county alone has jurisdiction of the case. The form of this plea is objected to because it is made in the name of the Culpeper National Bank, when such a plea must be filed by a corporation acting through its attorney; and the authorities support this proposition.

To show the strictness required in the form of dilatory pleas, we refer to *Guarantee Co. v. National Bank*, 95 Va. 486, 28 S. E. 909; and that a corporation is incapable of personal appearance and must appear by attorney is stated in 4 Min. Inst. (2d ed.) p. 686; 5 Rob. Pr. p. 23; Chitty's Pleading (16 Am. ed.) p. 577.

In 1 Cyc., p. 126, foot note, it is stated: "An objection to the jurisdiction by a corporation must be interposed by attorney since a corporation cannot appear in person."

We are, therefore, of opinion that the plea in abatement was properly overruled.

The declaration, among other things, states, that on the 9th of August the Culpeper National Bank, throught its president and managing officer, S. Russell Smith, discounted the note so presented for discount by the plaintiff, the proceeds of the discount being $1,980, but failed to place the proceeds to the credit of the plaintiff as it had agreed to do, but on the contrary thereof, without the knowledge or authority of the plaintiff, placed the proceeds to the credit of S. Russell Smith, individually, at his instance and request. Now, if the evidence sustains that statement, it would

seem plain that the Culpeper National Bank and S. Russell Smith agreed to perpetrate a fraud upon the Tidewater Improvement Company. It would amount to this, that the Culpeper National Bank and S. Russell Smith, conspiring to cheat the Tidewater Improvement Company, together consummated an act by which $1,980 was diverted from its lawful destination by a breach of its agreement on the part of the bank and a disregard of his duty upon the part of S. Russell Smith. If these facts were shown in evidence, we think they would be sufficient to raise a joint promise for the benefit of the Tidewater Improvement Company to restore to it that of which by their united action it had been unlawfully deprived.

But we do not think the evidence sustains the averment, and it is hardly necessary to say that such an averment could only be sustained by a clear preponderance of the proof. As far as we are able to see, the transaction upon the part of the Culpeper National Bank was the ordinary case of a note being brought to it for discount, and the proceeds, by direction of the holder, placed to his credit. The only way in which guilty knowledge can be brought home to the Culpeper National Bank is to impute to it what was known by its president, S. Russell Smith.

Upon this point *Baker* v. *Berry Hill Co.*, 112 Va. 281, 71 S. E. 626, which involved the same bank and the same president, is most instructive. It is there said that, "The general rule that knowledge of an agent acquired in executing his agency is imputed to the principal, and charges him with the liabilities which such knowledge imposes, has no application to the case of an officer of a corporation who, in an independent transaction for his own benefit, seeks to perpetrate a fraud on the corporation as well as upon a

third person. In such case it is presumed that the officer did not communicate his knowledge to the corporation, and the latter is not chargeable with constructive notice thereof." The opinion is supported by convincing reasoning and by the great weight of authority.

It is different to see what motive the bank could have had to unite in a fraud from which it could derive no benefit, but by which, if discovered, it must suffer a loss, and its ultimate discovery was almost certain. We are of opinion, upon this branch of the case, that the evidence does not sustain a joint promise, or any promise, indeed, express or implied, from the Culpeper National Bank to the Tidewater Improvement Company.

Coming then to the statutes of limitations of three and five years, it appears that the court instructed the jury upon that branch of the case as follows: "That causes of action like the one in this case are barred by the statute of limitations after three years from the time the same accrued, or as in this case after three years from the 9th day of August, 1907. But the court further tells the jury that if they believe from the evidence that the plaintiff was kept in ignorance of its rights by the dealings of the said S. Russell Smith, the president of the Culpeper National Bank, with the Tidewater Improvement Company, then the statute of limitations did not begin to run against the plaintiff until the time the true state of facts were discovered or in the exercise of ordinary care and diligence should have been discovered by the plaintiff."

We observe, first, that this instruction is erroneous in fixing the 9th day of August, 1907, as the period when the statute of limitations began to run, but this

6

defect not being prejudicial to the plaintiff in error would not be ground for reversal, and we. mention it only in order that the law may be properly stated. We are of opinion, as it is argued by plaintiff in error, that the statute began to run from the 9th day of November, 1908, when all banking transactions were concluded between the plaintiff and the defendant and a statement furnished the plaintiff showing no balance in the bank's hands to its credit.

Taking then the 9th of November, 1908, as the time when the statute of limitations began to run, and this suit not having been brought until the 4th of September, 1914, it is obvious that it was barred by the statute, unless the running of the statute was in some way hindered.

By section 2933 of the Code it is provided, that "Where any such right as is mentioned in this chapter shall accrue against a person who by departing without this State, or by absconding or concealing himself, or by continuing to reside without the State, or by any other indirect way or means shall obstruct the prosecution of such right the time that such obstruction may have continued shall not be computed as any part of the time in which the said right might or ought to have been prosecuted. But this action shall not avail against any other person than him so obstructing notwithstanding another might have been jointly sued with him if there had been no such obstruction."

The question then to be considered is whether the Culpeper National Bank, by any indirect way or means, obstructed the prosecution of this suit; if so, then the time such obstruction continued should not be computed as any part of the time in which the said right might or ought to have been prosecuted. It matters not that Smith may have fraudulently con-

cealed the fact so as to have prevented the institution of the suit. The sole question is whether or not the Culpeper National Bank has been guilty of such obstruction as is contemplated by section 2933.

The instruction under consideration tells the jury that if they believe that the plaintiff was kept in ignorance of its rights by the dealings of Smith with the Tidewater Improvement Company, then the statute of limitations did not begin to run against the plaintiff until the time the true state of facts was discovered. According to that instruction the dealings between Smith and the bank may have been ever so innocent, and yet they might, without any design upon their part, have tended to keep the plaintiff in ignorance of its rights. In order to produce that result we are of opinion that it must appear that there was some fraudulent act participated in by the bank which kept the plaintiff in ignorance of its rights.

In *Foster* v. *Rison*, 17 Gratt. (58 Va.) 321, it is said: "The mere fact that Marsten Foster was ignorant of the existence of any debt which may have been due to him by J. W. Foster until within five years before the institution of the suit, will not be sufficient to repeal the bar of the statute. To have that effect such ignorance must proceed from the fraud of J. W. Foster, which ought to be plainly charged by the pleadings, and clearly shown by the proofs." *Bickle* v. *Chrisman's Admx.*, 76 Va. 678.

In *Wood* v. *Carpenter*, 101 U. S. 143, 25 L. Ed. 807, the court says: "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and to prevent inquiry."

In 2 Wood on Limitations (4th ed.) p. 1422, it is said: "Mere silence by the person liable is not concealment, but there must be some affirmative act or

representation designed to prevent, and which does prevent, the discovery of the cause of action. Concealment of a cause of action preventing the running of limitations must consist of some trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence, and mere silence is insufficient. There must be something actually said or done which is directly intended to prevent discovery. Mere silence or concealment by a debtor may not, without affirmative misrepresentation, toll the running of the statute. Where, however, a debtor by actual fraud keeps his creditor in ignorance of the cause of action, the statute does not begin to run until the creditor had knowledge, or was put upon inquiry with means of knowledge that such cause of action had accrued. Fraudulent concealment must consist of affirmative acts of misrepresentation, mere silence being insufficient. The fraud which will relieve the bar of the statute must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action."

We think the court erred in its instruction with respect to the statute of limitations.

Upon the whole case, we think we have said enough to present our views of the law to the hustings court should the case again be tried. For the reasons given we are of opinion that the judgment should be reversed and the cause remanded for a trial to be had in accordance with the views herein expressed.

*Reversed.*