Present: Lemons, C.J., Goodwyn, Millette, and Powell, JJ., and Russell and Lacy, S.JJ.

ARSEAN LAMONE HICKS

v.  Record No. 131945                    OPINION BY SENIOR JUSTICE
                                         ELIZABETH B. LACY
DIRECTOR, DEPARTMENT                     February 26, 2015
OF CORRECTIONS

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

In this appeal, Arsean Lamone Hicks challenges the trial court's judgment that his petition for a writ of habeas corpus based on an alleged violation of the prosecution's duty to disclose exculpatory material under Brady v. Maryland, 373 U.S. 83 (1963), was untimely filed because it was not filed within the one year limitations period provided in Code § 8.01-654(A)(2).

FACTS AND PROCEEDINGS

In December of 1999, Hicks, then 16 years old, lived with his legal guardian, Haskell Corry, in Norfolk, Virginia. Hicks shared a bedroom with Larry Roscoe. On December 26, 1999, Hicks, Roscoe, and two other persons robbed a pizza delivery driver. During the robbery, Roscoe pointed his gun at the driver's head while Hicks took $50 from the driver's pocket and the other men took the pizzas. On December 27, 1999, Hicks committed a second armed robbery of a pizza delivery driver.

Two days later, on December 29, 1999, Hicks, Farrell Richardson and Kenny Riddick agreed to rob another pizza delivery driver. Hicks, wearing a mask and armed with Roscoe's gun, took the driver's money and the pizzas. Hicks then drove away in the delivery driver's vehicle. Later that evening, Hicks, Richardson and Riddick discussed robbing the Open House Diner in Norfolk, Virginia. Just before 2:00 a.m. on December 30, 1999, Richardson and Riddick entered the Open House Diner. After a few moments, Hicks, again wearing a mask and armed with Roscoe's gun, entered the diner, jumped across the counter, and announced the robbery. He ordered an employee to open the cash register. As Hicks was removing money from the register, Lisa Bailey, an off-duty federal police officer, approached him displaying her badge in an attempt to prevent the robbery. Hicks shot and killed the officer. Hicks and Richardson fled the diner.

Riddick, who had remained in the diner, was questioned by the Norfolk Police officers when they arrived on the scene. Based on Riddick's statements, the officers obtained a search warrant for Hicks' residence and yard. The police recovered a 9 millimeter handgun from the closet in the bedroom shared by Hicks and Roscoe. The officers also recovered pizza boxes from the establishments whose delivery drivers were robbed and items

2

belonging to the delivery driver whose car was stolen by Hicks. Subsequent testing showed that the handgun found in the bedroom Hicks shared with Roscoe was the weapon that fired the bullet killing Officer Bailey at the Open House Diner.

Hicks confessed to the December 26 and 27 robberies and was convicted in two separate jury trials. Hicks pled guilty to the December 29 carjacking, robbery and two counts of using a firearm in the commission of those felonies. Hicks subsequently pled not guilty to the Open House Diner crimes and, following a jury trial, was convicted of first degree murder, use of a firearm in the commission of murder, robbery, use of a firearm in the commission of robbery and conspiracy to commit robbery. Hicks' appeals of these convictions were unsuccessful and direct review concluded on January 9, 2004. On July 24, 2013, Hicks, appearing pro se and in forma pauperis, filed a petition for a writ of habeas corpus with regard to his convictions for the Open House Diner crimes. That petition is the subject of this appeal.

In his petition, Hicks alleged that on October 12, 2012, he received a sworn affidavit executed by Roscoe on November 28, 2006, stating that Roscoe had "admitted to Detective Ford that the gun, shoes, coat and mask were mine when I gave him a recorded statement at the [police operations center]. [A]t no

3

time did anyone touch or use my items which I also stated [there was] no way possible any of them could have committed those crimes if these items are said to have been used."  Roscoe had given this affidavit to Richardson, who, according to Richardson's affidavit "sat on it" for several years before giving it to Hicks' girlfriend, who, in turn, mailed it to Hicks in October of 2012.

Based on this information, Hicks asserted that the Norfolk Commonwealth Attorney suppressed or failed to disclose Roscoe's recorded statement referenced in the affidavit and that the affidavit contained exculpatory evidence in violation of Hicks' due process rights under the Constitution of the United States and Article I, Section 11 of the Constitution of Virginia, as defined in Brady.  In response, the Commonwealth filed a motion to dismiss, arguing that Code § 8.01-654(A)(2) requires that a petition for habeas corpus be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.  Because Hicks' petition was filed more than nine years after his conviction was final, the Commonwealth concluded the petition was untimely and should be dismissed.

4

Hicks opposed the Commonwealth's motion to dismiss, stating that applying the statutory limitations period without exception constitutes a suspension of the writ of habeas corpus in violation of Article I, Section 11 of the Constitution of Virginia. Hicks contended that the limitations statute is not absolute, arguing that in Hines v. Kuplinski, 267 Va. 1, 591 S.E.2d 692 (2004) the same issue was raised and, while not directly decided because the petitioner in Hines did not meet the factual predicate for a late filing based on previously unknown information, the Court nevertheless engaged in the applicable analysis. Because the Court engaged in the analysis, Hicks contended that the "only logical conclusion therefore is that had Hines been able to prove that the basis of his claim was not previously available . . . the Court would have held that applying the limitations period would be unconstitutional."

The trial court ultimately dismissed Hicks' petition, holding that it was not timely filed under Code § 8.01-654(A)(2) and that the application of the limitations statute to petitions for a writ of habeas corpus did not suspend the writ of habeas corpus in violation of Article I, Section 11 of the Constitution of Virginia. We awarded Hicks an appeal.

5

ANALYSIS

Hicks raises three assignments of error. In his first two assignments of error he asserts that the trial court erred in ruling that habeas corpus relief was not available to him based on a claim of newly discovered withheld exculpatory evidence because it was untimely. His third assignment of error recites that applying the limitations period of Code § 8.01-654(A)(2) to Hicks' claim violates the bar against suspension of the writ of habeas corpus contained in Article I, Section 9 of the Constitution of Virginia. We will consider these claims in order.

Hicks first argues that his petition was timely filed under Code § 8.01-229(D). That section provides in pertinent part:

> When the filing of an action is obstructed by a defendant's . . . using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

This section, Hicks argues, operates as an exception to the limitations period established in Code § 8.01-654(A)(2). Habeas corpus is a civil action, and Hicks contends that the Commonwealth, as the responding party or defendant, had and continued to withhold exculpatory evidence which was unknown to Hicks until October 12, 2012. Hicks argues that the one year period for filing his petition for habeas corpus began to run at

6

that point and his petition filed on July 24, 2013, was filed within one year of that date.

The Commonwealth asserts that Supreme Court Rule 5:25 bars our consideration of this argument because it was not raised before the habeas court. Hicks acknowledges that, proceeding pro se and in forma pauperis, he did not specifically cite Code § 8.01-229(D) to the habeas court, but argues that by asserting he filed the petition within one year of learning of the withheld exculpatory evidence he "disclosed the foundation for statutory tolling" and his argument "functionally mirrored the text of the tolling statute." Hicks also contends that even if his arguments did not preserve the issue for appeal, we should apply the ends of justice exception to Rule 5:25 and consider application of Code § 8.01-229(D) here.

We disagree with Hicks' assertion that his arguments were sufficient to alert the habeas court to the tolling provisions of Code § 8.01-229(D). As reflected in the record, Hicks' arguments to support timely filing within one year of learning of the Roscoe affidavit were directed to the provisions in Code § 8.01-654(B)(2), which addresses the filing of successive petitions based on newly acquired information. There was no suggestion that any other statute was the source for tolling the limitations period contained in Code § 8.01-654(A)(2).

7

Accordingly, unless we can determine that the ends of justice provision of Rule 5:25 applies here, we must conclude that the rule precludes our consideration of Hicks' argument that Code § 8.01-229(D) tolled the limitations period for filing his habeas corpus petition.

## Ends of Justice Exception

We apply the ends of justice exception to Rule 5:25 in limited circumstances. Gheorghiu v. Commonwealth, 280 Va. 678, 689, 701 S.E.2d 407, 413-14 (2010)(citing Ali v. Commonwealth, 280 Va. 665, 671, 701 S.E.2d 64, 68 (2010); Charles v. Commonwealth, 270 Va. 14, 17, 20, 613 S.E.2d 432, 433, 435 (2005); Jimenez v. Commonwealth, 241 Va. 244, 249-50, 402 S.E.2d 678, 680 (1991); Ball v. Commonwealth, 221 Va. 754, 758, 273 S.E.2d 790, 793 (1981)). Applying the exception is appropriate when there is error as contended by the appellant and when the failure to apply the exception would result in a grave injustice. Gheorghiu, 280 Va. at 689, 701 S.E.2d at 413.

### 1. Error

The Commonwealth argues that there was no error in the trial court's judgment because Code § 8.01-229(D) does not apply to the limitations period established for the filing of petitions for habeas corpus relief. In support of its position, the Commonwealth offers a number of arguments. First, the

8

Commonwealth contends that statutes of limitations must be strictly enforced "unless the General Assembly has clearly created an exception to their application," Casey v. Merck & Co., 283 Va. 411, 416, 722 S.E.2d 842, 845 (2012), and Code § 8.01-654(A)(2) contains no exceptions. Furthermore, according to the Commonwealth, Code § 8.01-654(A)(2) is a specific statute, while Code § 8.01-229(D) is a statute of general application, and as a result the general statute cannot prevail over the provisions of the more specific statute. Daniels v. Warden, 266 Va. 399, 402, 588 S.E.2d 382, 384 (2003).

We do not find this argument persuasive. The lack of an exception to the limitations period within Code § 8.01-654(A)(2) does not preclude application of an exception contained in another statute. That is precisely what the General Assembly has done in Code § 8.01-229 with regard to many other provisions in the Code of Virginia containing specific statutes of limitations. Section 8.01-229, entitled in part as "Suspension or tolling of statute of limitations" contains multiple subsections identifying instances in which limitations periods established in other parts of the Code may be tolled. See, e.g., Code § 8.01-229(A)(providing tolling based on certain disabilities, such as infancy or adjudicated incapacitation);

9

-229(B)(providing tolling when person entitled to file an action dies before filing or when person against whom an action may be filed dies before the action is filed); -229(C)(providing tolling when the commencement of an action is suspended due to an injunction); and -229(E)(providing tolling under certain circumstances when an action is dismissed without determining the merits, abates or is nonsuited). The Commonwealth's logic would vitiate application of virtually every subsection in the statute because they each deal with limitations periods established elsewhere.

Next, the Commonwealth asserts, even if Code § 8.01-229(D) provided an exception to the more specific habeas limitations statute, it is not available in this case because its application requires a showing that the defendant's obstruction be in the nature of moral turpitude, relying on Newman v. Walker, 270 Va. 291, 296, 618 S.E.2d 336, 340 (2005). According to the Commonwealth, Hicks' Brady claim arises from an inadvertent act of the prosecutor, not from an intentional act implicating moral turpitude.

The Commonwealth correctly argues that in previous cases we have said that to invoke the tolling provision of Code § 8.01-229(D), the obstruction by the defendant "'must consist of affirmative acts of misrepresentation'" and that "'[t]he fraud

10

which will relieve the bar of the statute must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action.'" Culpeper Nat'l Bank v. Tidewater Improvement Co., 119 Va. 73, 84, 89 S.E. 118, 121 (1916). However, none of our cases addressing the nature of the obstruction necessary to invoke Code § 8.01-229(D) involved a petition for habeas corpus based on a Brady violation.

A claim for relief based on an alleged Brady violation is unlike any claim addressed in our previous cases involving Code § 8.01-229(D). The failure to disclose in a Brady claim is more than a simple omission or act obstructing the filing of a civil action; it is the core element of the claim for relief itself, which results in injury to the litigant. Disclosure of exculpatory evidence is an affirmative duty not dependent on a request from the accused, applying to impeachment as well as affirmative evidence, and this duty is violated whether the failure to produce the exculpatory information was intentional or inadvertent. Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Furthermore, as particularly relevant here, the Brady doctrine encompasses "evidence 'known only to police investigators and not to the prosecutor,'" id. at 280-81, and requires its disclosure.

11

The Commonwealth's reasoning that the failure to disclose in this case was insufficient to invoke the statutory tolling provisions would preclude application of Code § 8.01-229(D) in every instance in which a government actor other than the prosecutor engaged in acts of nondisclosure. Such an interpretation of Code § 8.01-229(D) would afford a safe haven for nondisclosure, which is inconsistent with the elements of the Brady doctrine and undermines the importance of Brady in our criminal justice system. For these reasons, we conclude that in a claim for habeas corpus relief based on a Brady violation, the failure to disclose exculpatory evidence qualifies as obstruction by the defendant that prevents the filing of the claim for purposes of Code § 8.01-229(D).

Finally, the Commonwealth argues that Hicks' petition is untimely even under Code § 8.01-229(D) because Hicks learned of Roscoe's statement no later than March 24, 2009, based on statements contained in a motion filed by Hicks for recovery and testing of DNA. The motion to which the Commonwealth refers sought DNA testing of a shoe recovered at Hicks' residence that matched the shoe impression left on the counter at the murder scene. In that motion Hicks refers to a "confession" Larry Roscoe gave to Hicks. Nothing in this motion mentions the recorded statement allegedly given to the investigating

12

detective or Roscoe's exclusive possession of certain items, which are the subject of the allegedly withheld evidence. Therefore, we reject the Commonwealth's argument that the tolling provision of Code § 8.01-229(D) does not apply because Hicks was aware of the evidence allegedly withheld more than one year before he filed his habeas corpus petition.

In summary, we conclude that the tolling provision of Code § 8.01-229(D) is applicable to the limitations period of Code § 8.01-654(A)(2) and, therefore, it was error to conclude that Hicks' petition for habeas corpus was untimely.

## 2. Grave Injustice

Before we apply the ends of justice exception of Rule 5:25, however, we must determine whether the failure to apply the exception would result in a grave injustice. Gheorghiu, 280 Va. at 689, 701 S.E.2d at 413. Under the facts of this case, Hicks would suffer a grave injustice if his Brady claim was meritorious but barred from consideration by Rule 5:25. There are three components of a violation of the Brady rule of disclosure:

> a) The evidence not disclosed to the accused must be favorable to the accused, either because it is exculpatory, or because it may be used for impeachment; b) the evidence not disclosed must have been withheld by the Commonwealth either willfully or inadvertently; and c) the accused must have been prejudiced.

13

Workman v. Commonwealth, 272 Va. 633, 644-45, 636 S.E.2d 368, 374 (2006)(quoting Strickler, 527 U.S. at 281-82)(citations and internal quotation marks omitted). We also have recognized that "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). A reviewing court must determine whether the withheld favorable evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," Strickler, 527 U.S. at 290 (citation and internal quotation marks omitted); that is, whether such evidence was material.

Hicks bases his Brady claim on statements contained in an affidavit executed by Roscoe in which Roscoe stated that he gave a recorded statement to the investigating detective indicating that the gun, shoes, coat and mask were his and that no one else touched or used the items and that as a result, it was not possible that the items could have been used in the crimes. Hicks argues that this statement was exculpatory because it "proves that only Larry Roscoe could have committed [the Open House Diner crimes]" and "had [the jury] known of Roscoe's

14

statement, they would never have found" Hicks guilty beyond a reasonable doubt.  Taking Hicks' allegations as true, <u>Morris v. Smyth</u>, 202 Va. 832, 833, 120 S.E.2d 465, 466 (1961), we acknowledge that the information in Roscoe's affidavit, on its face, is exculpatory.  While the Commonwealth raises some question about the existence of a recorded statement, for purposes of this analysis we will assume that Roscoe's recorded statement exists, contains the statements alleged by Hicks and that the Commonwealth failed to disclose it.  With those assumptions, the final question remains whether the allegedly nondisclosed evidence was material.

In determining materiality we are guided by the following principles:

> [A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant).  Second, materiality is not a sufficiency of the evidence test.  A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict.  Third, a harmless error analysis is unnecessary once materiality has been determined.  Fourth, suppressed evidence must be considered collectively, not item by item.

<u>Workman</u>, 272 Va. at 645, 636 S.E.2d at 375 (internal quotation marks, alterations, and citations omitted).

15

Applying these factors to the evidence in this case, which includes transcripts from Hicks' criminal trial, we cannot conclude that the suppression of Roscoe's statement undermines confidence in the outcome of Hicks' trial. At his jury trial for the Open House Diner crimes, Hicks testified that he pled guilty to committing the December 29, 1999 pizza delivery robbery and carjacking crimes, which occurred only hours before the Open House Diner crimes. Hicks testified that he wore a mask and used Roscoe's gun in the commission of those crimes. There was no dispute at Hicks' trial that the gun recovered at Hicks' residence belonged to Roscoe and that Roscoe's gun was the weapon used to murder Officer Bailey. Hicks' trial testimony conclusively established that Hicks not only had access to the murder weapon – Roscoe's gun – but also that he had actual possession and control of it just hours before the murder of Officer Bailey. Hicks' own testimony and the forensic evidence presented to the jury at trial is inconsistent with Roscoe's statements.

Furthermore, Hicks also testified that Roscoe did not commit the Open House Diner crimes because another man, known only as "Moe," committed the crimes.

The jury also heard Hicks' recorded confession to the Open House Diner crimes, as given to the investigating officers.

16

Although Hicks argued at trial that the confession was coerced, the verdict demonstrates that the jury did not find Hicks' coercion claim credible.

Based on this record, the allegedly withheld evidence could not reasonably be taken "to put the whole case in such a different light" that confidence in the guilty verdict is undermined. Strickler, 527 U.S. at 290; Kyles, 514 U.S. at 434. Therefore, we hold that such evidence was not material. Because the allegedly nondisclosed evidence was not material, Hicks fails to establish that he was prejudiced and, therefore, has failed to prove a necessary component to his Brady claim. Consequently, the failure to apply the ends of justice exception would not result in a grave injustice to Hicks, and we will not apply the ends of justice exception to Rule 5:25 in this case.

In light of our holding that the tolling provision of Code § 8.01-229(D) is applicable to the limitations period in Code § 8.01-654(A)(2), we need not address Hicks' third assignment of error.

## CONCLUSION

For the reasons stated, we will affirm the judgment of the trial court.

<u>Affirmed.</u>

17