COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Raphael
Argued at Richmond, Virginia

**UNPUBLISHED**

ANTHONY BURCHARD, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
JANUARY 28, 2025

v.     Record No. 1432-23-2

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUISA COUNTY
Timothy K. Sanner, Judge

Christopher M. Okay for appellants.

Erin R. McNeill, Assistant Attorney General (Jason S. Miyares,
Attorney General; Charles H. Slemp, III, Chief Deputy Attorney
General; Steven G. Popps, Deputy Attorney General; Jacqueline C.
Hedblom, Senior Assistant Attorney General; Christopher P.
Bernhardt, Assistant Attorney General, on brief), for appellee.

Anthony and Renee Burchard appeal the dismissal of their Virginia Tort Claims Act

(VTCA) action against the Commonwealth that sought damages arising from an improperly sited

well on their property. The court dismissed the action as time-barred under the VTCA because the

Burchards did not submit a notice of claim within a year from when the well was drilled.

The Burchards' eight assignments of error fall into three categories. First, they argue the

court erred in finding that their cause of action accrued when the well was drilled, rather than when

they began suffering economic losses later.

Second, the Burchards contend the court erred by not tolling the VTCA's one-year

limitations period under Code § 8.01-229(D), because the evidence showed that the Commonwealth

used "direct or indirect means to obstruct the filing" of this action.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Finally, they challenge the court's evidentiary decision to exclude a state agency's "manual" for implementing regulations related to private wells. Finding no error, we affirm.

BACKGROUND

The facts are largely undisputed. On August 12, 2016, an inspector from the Louisa County Health Department visited the Burchards' property to identify a suitable location for a new well. The inspector issued a private well construction permit that attached a drawing of the location he approved; he also marked the location with four wooden stakes.

The permit stated that it "is null and void . . . if conditions are changed from those shown on the attached construction drawings and specifications." The permit also provided that the "landowner is responsible at all times for complying with all applicable local, state, and federal laws and regulations, and for ensuring that the water well is properly located on the landowner's property and in the approved area."

The permit required the Burchards, as the landowners, to take certain steps after drilling the well but before putting it into operation:

> Your private well must be inspected by a representative of the local health department. Your private well may not be placed into operation until you have obtained a Record of Inspection (ROI) from the Louisa County Health Department.
>
> Before you can obtain your ROI, you must provide the Health Department with a complete Water Well Completion Statement . . . from your well driller and a record of a satisfactory bacteriological sample result.

Although the permit's attached construction drawing depicted the proposed well's location as 57 feet from a septic drainfield on the Burchards' property, that drawing did not reflect the actual location of the drainfield. In fact, the proposed well location was within the septic drainfield. As a result, the Burchards' contractor drilled a well within the drainfield on August 18, 2016 in violation of Virginia Department of Health (VDH) administrative agency regulations. *See, e.g.*, 12 VAC

5-630-380(A); Table 3.1 (requiring minimum separation of 50 feet between certain private wells and a septic drainfield).

The Burchards did not obtain a bacteriological sample of the water from the well as required by their permit. With no bacteriological sample of the well water, the VDH could not conduct its final inspection and issue a record of inspection. The Burchards thus did not obtain a record of inspection before putting their well into service, violating the permit's terms. The Burchards started to draw water from the well in September 2016.

VDH had no contact with the Burchards for over a year after issuing the permit.

In February 2018, when attempting to sell their property, the Burchards obtained a third-party inspection of the septic system and learned that their well had been improperly located. The inspector's report stated that the well "appear[ed] to be located in the existing [septic] drainfield and [was] within 33' of the existing septic tank" and therefore did "not meet the current regulations." The report advised "ceasing all water consumption from this well until this issue with the drainfield can be resolved."

The Burchards submitted a notice of claim to the Commonwealth's Division of Risk Management (DRM) on June 26, 2018. In September 2018, a DRM representative informed the Burchards that it was reviewing their claim. In October 2018, the Burchards rejected an offer from DRM and stated that they would pursue their matter in court.

The Burchards brought a VTCA action on December 20, 2019, alleging damages resulting from negligence by the Commonwealth's VDH employee in inspecting the property and siting the well on or around August 12, 2016. The Burchards also sued their drilling contractor for breach of contract and negligence.

Significantly, the complaint alleged that VDH employees had inspected the well after it was drilled and had issued a record of inspection before the Burchards began using the well. The

Commonwealth filed a plea in bar asserting that the claims were time-barred under the VTCA. At a hearing, the court found that the Burchards' cause of action accrued in August 2016. However, the Burchards argued that the VTCA limitations period should be tolled pursuant to Code § 8.01-229(D) because the VDH allegedly inspected the well after it was drilled and authorized its use, reflecting an affirmative misrepresentation that obstructed the filing of the action. The court therefore denied the Commonwealth's plea in bar so that the parties could exchange discovery on the issue of whether the Commonwealth used "direct or indirect means to obstruct the filing of the action" that would toll the VTCA limitations period pursuant to Code § 8.01-229(D).

The Commonwealth subsequently renewed its plea of the statute of limitations, arguing there was no basis to toll the statute. Discovery revealed that, contrary to the complaint, the Burchards had not obtained the record of inspection before using their well and that VDH had not communicated with them in either 2016 or 2017 after issuing the permit.

At a hearing on the Commonwealth's renewed plea, the court heard argument and received evidence in the form of exhibits attached to the pleadings. When the Burchards attempted to rely on the VDH's manual for implementing private well regulations, the court sustained the Commonwealth's objection because the agency's internal guidelines were not admissible to establish the standard of care.

Consistent with its prior ruling, the court determined that the Burchards' cause of action against the Commonwealth accrued "on or about August 19, 2016 when the well at issue in this litigation was drilled."[1] The court found that the Burchards submitted their notice of claim on June 26, 2018, which was not within one year of accrual, that they filed their action more than two years after accrual, and that they failed to present evidence sufficient to toll the running of the VTCA

---

[1] Although the well was actually drilled on August 18, 2016, the court used August 19, 2016, as the accrual date because that was the later of the two dates in question and therefore "better for [the Burchards]."

- 4 -

limitations period.  The court granted the plea of the statute of limitations and dismissed the action against the Commonwealth with prejudice.[2]

ANALYSIS

I.  Accrual of the Cause of Action (Assignments of Error 1, 2, 3, and 7)

The Burchards challenge the court's determination that their cause of action accrued in August 2016, arguing they suffered no damage or injury at that time.  Instead, they contend that their cause of action accrued in February 2018, when they first discovered that the well had been improperly located and they started incurring monetary damages.

Absent a genuine issue of material fact, a ruling on a plea in bar as to the statute of limitations presents a question of law that appellate courts review de novo.  *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 154 (2018); *see Thorsen v. Richmond SPCA*, 292 Va. 257, 277 (2016).  Here, the parties do not dispute when the drilling occurred, only the legal question of whether the cause of action accrued at that time.  Because the material facts are undisputed, "we decide this [issue] entirely on governing principles of law."  *Kerns*, 296 Va. at 154.

The Burchards sued the Commonwealth pursuant to the VTCA.  *See* Code §§ 8.01-195.1 to -195.9.  "[T]hrough the enactment of the VTCA, the General Assembly has provided an 'express but limited waiver of the Commonwealth's immunity from tort claims.'"  *Phelan v. Commonwealth*, 291 Va. 192, 195 (2016) (quoting *Melanson v. Commonwealth*, 261 Va. 178, 181 (2001)).  Because the VTCA "is in derogation of the common law, 'strict compliance with all of its provisions is required.'"  *Id.* (quoting *Halberstam v. Commonwealth*, 251 Va. 248, 251 (1996)).

The VTCA's statute of limitations, Code § 8.01-195.7, provides that "[e]very claim cognizable against the Commonwealth . . . shall be forever barred, unless within one year after the

_____

[2] The court granted the Burchards leave to file an amended complaint against the drilling contractor, and they did so in July 2023.  Those claims resolved, and the court dismissed the amended complaint with prejudice.

cause of action accrues to the claimant the notice of claim required by [Code] § 8.01-195.6[3] is properly filed."

A cause of action is "simply the 'set of operative facts' that causes a claimant to assert his claim." *Kerns*, 296 Va. at 155-56 (quoting *Cherrie v. Va. Health Servs.*, 292 Va. 309, 314 (2016)); *see also Roller v. Basic Constr. Co.*, 238 Va. 321, 327 (1989) ("[A] cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action."). Although "cause of action" and "right of action" are not synonymous, the accrual date is typically the same for both in tort cases involving property damage or personal injury claims. *Kerns*, 296 Va. at 158 (noting that the accrual date for a cause of action and right of action "will usually be a distinction without a difference").

Code § 8.01-230 provides that a "right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property . . . and not when the resulting damage is discovered."

"The duty-breach-harm sequence for a tort claim, when complete, triggers the accrual of a cause of action as well as a right of action upon the date of damage or injury." *Kerns*, 296 Va. at 157-58; *see also Stone v. Ethan Allen, Inc.*, 232 Va. 365, 368-69 (1986). As reflected in Code § 8.01-230, Virginia rejects the so-called discovery rule whereby a limitations period does not begin to run until damages are discovered. *See Stone*, 232 Va. at 368-69.

For a cause of action to accrue, only "[s]ome injury or damage, however slight" is required, and it is "immaterial that all the damages resulting from the injury do not occur at the time of the injury." *Kerns*, 296 Va. at 157 (alteration in original) (quoting *Van Dam v. Gay*, 280 Va. 457, 463 (2010)). The running of a limitations period "is not postponed by the fact that the actual or

---

[3] Code § 8.01-195.6, in turn, requires that the notice of claim include certain details such as the date and location of the alleged wrong and the agency potentially liable.

substantial damages do not occur until a later date." *Id.* at 159 (emphasis omitted) (quoting *Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 14-15 (1969)). Moreover, the "slight" damages that trigger an accrual date "need not be 'ascertained with specificity' at the time of breach." *Id.* (quoting *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 548 (1989)).

In their complaint, the Burchards sought damages resulting from the Commonwealth's negligence in failing to locate a compliant well site and in failing to warn them of the error. They also sought damages "suffered . . . due to their continuous exposure to non-potable drinking water and other unsanitary conditions." Regardless of whether these claims seek a remedy for property damage or personal injury resulting from the Commonwealth's negligence, the record shows that the cause of action accrued by August 19, 2016.

Specifically, the record shows that the VDH inspector had a duty to identify a compliant location for the private well but failed to do so. Instead, the Commonwealth issued a permit with a non-compliant location and marked the spot with four wooden stakes. As a result, by August 19, the Burchards' contractor drilled the well inside the septic drainfield. This mislocated well made their property unmarketable until a compliant well was constructed. They were exposed to unsanitary conditions immediately upon drilling. Therefore, the "duty-breach-harm sequence" for the Burchards' tort claim was complete when the mislocated well was drilled. *Kerns*, 296 Va. at 157-58.

The Burchards argue that they were not injured in August 2016 when the well was drilled but, rather, when they had to pay to abandon the well and could not use their property for vacation rentals. However, a cause of action accrues when the "first measurable damage occurs." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 123 (2017). The later liquidation of damages in the form of payment for a new well and loss of rental income does not postpone the accrual of the cause of action.

Additionally, the Burchards' position that they were not injured when the well was drilled contradicts other representations they have made in this litigation. First, in their complaint, they specifically alleged that they "incurred significant economic damages and loss due to the *sudden* and unexpected availability of potable water and approved sewage disposal at the [p]roperty, including: exposure of [the Burchards] and other users of the decommissioned [w]ell to unsanitary, non-potable water *from August 19, 2016* through February 16, 2018." (Emphases added). Additionally, the Burchards' June 2018 notice of claim to DRM attached an itemized list of economic losses that reached back to August 2016.[4] In opposition to the Commonwealth's plea of the statute of limitations, the Burchards again recognized that their damages began when the well was drilled pursuant to the permit, stating that they began to draw water from the well and "on an ongoing and continuous basis thereafter . . . used such water source for all residential purposes, including drinking water, bathing, cooking, cleaning, and all other appropriate and lawful uses of the private well water from September 2016 until February 16, 2018." The Burchards cannot circumvent these factual positions and now contend they suffered no damages until their economic losses began in February 2018.

Assuming without deciding that the Burchards' tort theory here was viable,[5] they had to bring this VTCA action against the Commonwealth as soon as the negligently located well was

---

[4] The Burchards' list of damages also included lost rent from August 2017, which contradicts any claim that they suffered no injuries until February 2018.

[5] We note that the Burchards' claim for economic losses misapprehends the nature of a tort claim. A party may not use tort claims of negligence to recover "purely economic losses" or "damages for injury to property" that was the subject of a contract. *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 423, 425 (1988). Here, after the Commonwealth was dismissed from the case, the Burchards were granted leave to pursue a contract action against their drilling contractor. The Burchards cannot rely on economic losses that would have been recoverable only in a contract action to delay accrual of their tort claim against the Commonwealth. *See id.*; *see also Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 98-101 (2019) (distinguishing between contract and tort remedies).

drilled because they sustained damages immediately. It matters not that their economic losses grew over time. *See Forest Lakes Cmty. Ass'n*, 293 Va. at 129 (noting that, in the context of tort damages caused by permanent structures, "the limitation period 'will *not* be extended simply because the damage is much larger in later years that it was when the structures were first erected'" (quoting Kent Sinclair, *Sinclair on Remedies* § 65-4[C], at 65-21 (5th ed. 2016))). As the VTCA represents a waiver of the Commonwealth's sovereign immunity, we construe its provisions narrowly. *See Melanson*, 261 Va. at 181. For these reasons, we hold that the court did not err in finding that the Burchards' cause of action accrued by August 19, 2016.

## II. Tolling (Assignments of Error 4, 5, and 8)

The Burchards contend the court erred by not tolling the VTCA's one-year limitations period pursuant to Code § 8.01-229(D). This statute provides for tolling "[w]hen the filing of an action is obstructed by" a defendant using any "direct or indirect means." Code § 8.01-229(D).

"A plaintiff seeking to rely on this tolling provision 'must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file [the] action.'" *Mackey v. McDannald*, 298 Va. 645, 655 (2020) (alteration in original) (quoting *Grimes v. Suzukawa*, 262 Va. 330, 332 (2001)).

"An act that 'will relieve the bar of the statute [of limitations] must be of that character which involves moral turpitude, and [it] must have the effect of debarring or deterring the plaintiff from his action.'" *Id.* (quoting *Newman v. Walker*, 270 Va. 291, 298 (2005)). "Mere silence by the [defendant] is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action." *Id.* at 656 (quoting *Culpeper Nat'l Bank v. Tidewater Improvement Co.*, 119 Va. 73, 83-84 (1916)). "The requisite obstruction 'must consist of some trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence.'" *Id.* (quoting *Culpeper Nat'l Bank*, 119 Va. at 84).

Whether the evidence was sufficient to prove the Commonwealth used "direct or indirect means to obstruct the filing of an action" is a question for the trier of fact. *Id.* at 658 (quoting Code § 8.01-229(D)). We defer to the court's factual findings unless plainly wrong or without supporting evidence. *Id.* Here, the court found no basis for tolling the statute of limitations pursuant to Code § 8.01-229(D). This factual finding is not plainly wrong.

The Burchards argue that the Commonwealth's obstructive conduct began when its local VDH inspector mislocated the septic system and issued a permit that misrepresented the proposed well as being in a lawful and compliant spot. But this assertion is unpersuasive because it conflates the Commonwealth's underlying tort with its alleged obstruction. *See Grimes*, 262 Va. at 332 (holding that a defendant's mask-wearing to conceal his identity during the commission of a tort could not establish obstruction under Code § 8.01-229(D)). The VDH employee's negligent act cannot establish the Commonwealth's intent to obstruct the resulting litigation. *See id.* Moreover, the VDH inspector marked the location for drilling with four wooden stakes. The Burchards were aware of these stakes, and thus the location for the well, from August 2016 onward.

Next, the Burchards insist that the Commonwealth's failure to inspect the well and close the well permit file amounted to obstructive conduct sufficient to toll the limitations period. But the permit clearly made it the landowner's responsibility to obtain the necessary inspection before using the well. Specifically, the permit stated that, before they could obtain a record of inspection and activate the well, the Burchards needed to provide VDH a "record of a satisfactory bacteriological sample result." VDH never received a bacteriological water sample result, and the Burchards never received a record of inspection from VDH, contrary to allegations in the complaint. The Burchards admitted that they had no contact with VDH after receiving the permit through the end of January 2018. These facts establish that the Burchards did not comply with the permit's requirements and

fail to demonstrate any affirmative act designed or intended to obstruct their right to file a notice of claim or lawsuit. *Mackey*, 298 Va. at 655-56.

It is undisputed that the Commonwealth's agent committed an error in determining a location for the well and issuing a permit. However, this error does not amount to an affirmative act sufficient to toll the VTCA's limitations period under Code § 8.01-229(D). The Burchards offered no evidence of actions by Commonwealth employees designed or intended to deceive the Burchards or that involved "moral turpitude." *Id.* at 655. At most, the Burchards' evidence reflected negligence and silence by Commonwealth employees, which is insufficient to toll the limitations period. *See id.*

Additionally, any actions taken by the Commonwealth after the statute of limitations ran in August 2017 could not trigger tolling under Code § 8.01-229(D). The Burchards argue that VDH employees failed to disclose errors in the 2016 well inspection and permitting process after learning of them between April 2018 and June 2018. A failure to disclose is the same as silence, which cannot toll the statute of limitations. *Id.* No evidence established that these employees intended to obstruct the filing—and nor could these employees have intended this obstruction since the Burchards' action was already time-barred.

The Burchards also point to emails from a DRM employee informing the Burchards in September 2018 that he was gathering information and would assess their claim. These emails also show that, in October 2018, the Burchards rejected a settlement offer from DRM and noted that they would pursue their claims in court. Finally, in September 2019, DRM advised the Burchards of its position that their claims were time-barred. According to the Burchards, these emails reflect the Commonwealth's strategy of "stringing [them] along until any arguable limitations period passed."

The court found this evidence insufficient to prove DRM's design or intent to prevent the filing or discovery of this cause of action. This finding is not plainly wrong. Significantly, by the

time they were communicating with DRM, the Burchards had already given notice of their claims and these claims had already expired. Accordingly, the Burchards failed to establish tolling based on actions of Commonwealth employees in 2018 and 2019.

For these reasons, the court did not err in finding insufficient evidence to toll the statute of limitations under Code § 8.01-229(D).

### III. Admissibility of Agency Manual (Assignment of Error 6)

The Burchards argue that the court abused its discretion by excluding the VDH's "Private Well Regulations Implementation Manual" and deposition testimony from a local health department employee "confirming [the manual's] application in local practice." The Burchards offered this evidence to prove the "entirety of the water well permitting process," because the applicable regulations only "speak in generalities." They argue that this evidence was admissible to establish the Commonwealth's duty to follow up with the Burchards at certain times after issuing the permit in August 2016.

We review evidentiary decisions for an abuse of discretion. *John Crane, Inc. v. Jones*, 274 Va. 581, 590 (2007). An agency's internal policies and procedures are not admissible to establish a standard of care. *See Pullen v. Nickens*, 226 Va. 342, 350 (1983); *Va. Ry. & Power Co. v. Godsey*, 117 Va. 167, 168-69 (1915). In *Pullen*, a plaintiff attempted to rely on the state highway department's internal rules to establish the standard of care for an employee who stopped his vehicle on the highway during a repair operation, which resulted in another motorist swerving and crashing. 226 Va. at 349-50. The Supreme Court held that the rules should have been excluded because they were intended to guide the agency employees, there was no evidence that the plaintiff was aware of them, and "the adoption of private rules [cannot] fix the standard of . . . duty to others." *Id.* at 350 (quoting *Godsey*, 117 Va. at 168).

The VDH implementation manual was properly excluded for similar reasons here. The manual is for local health department employees and gives practical advice for delegating authority and streamlining tasks. Although posted on a public government website, the manual is for internal agency use. No evidence showed that the Burchards were aware of the manual. Under *Pullen*, the VDH's adoption of this internal manual cannot fix the agency's standard of care to others. *See id.*

The Burchards contend the court erred in refusing to take judicial notice of the manual. Courts "shall take judicial notice of the contents of all official publications of this Commonwealth . . . and agencies required to be published." Code § 8.01-388; *accord* Va. R. Evid. 2:203. Additionally, courts "may take judicial notice of a factual matter not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Va. R. Evid. 2:201. Nothing in the record indicates that the manual was "required to be published," and therefore the court was not required to take judicial notice under Rule 2:203 and Code § 8.01-388. Furthermore, the court did not abuse its discretion in refusing judicial notice under Rule 2:201, where the manual could not serve the evidentiary purpose for which the Burchards offered it—to establish a standard of care.

Contrary to the Burchards' representations, the VDH implementation manual is not an administrative regulation, which is adopted by an agency after a public notice and comment period and which has "the force of law." Code § 2.2-4001. Moreover, internal manuals are specifically exempted from the category of regulatory materials known as "guidance documents," which are also subject to public notice and comment periods. *See* Code § 2.2-4002.1(A)(v), (B). The manual is not binding on the Commonwealth or admissible to establish a standard of care.

CONCLUSION

The court did not err in sustaining the Commonwealth's plea in bar and dismissing the

Burchards' VTCA action with prejudice.  Therefore, we affirm the judgment below.

*Affirmed.*